**Dorothy GILBERT, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**No. 1310.**

United States District Court
D. Montana,
Butte Division.
May 19, 1966.

J. J. McCaffery, Jr., Butte, Mont., for plaintiff.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendant.

MURRAY, Senior District Judge.

This action is brought under the provisions of Title 42 U.S.C.A. § 405(g) to review the final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for disability insurance benefits and a period of disability under the Social Security Act, 42 U.S.C.A. §§ 423(a) and 416(i).

Plaintiff's application was filed February 14, 1964. Plaintiff filed prior applications which were denied and plaintiff did not pursue her administrative remedies. The denials thus became final decisions and are now res judicata.

The application of February 14, 1964, was denied. A hearing was requested and had before an examiner who found that plaintiff was not under a disability. Plaintiff requested a review by the Appeals Council, but this was denied. Thus the decision of the hearing examiner is the final decision under review here.

It is conceded that plaintiff last met the special earnings requirements on March 31, 1963.

In order to be eligible for a period of disability and for disability insurance benefits, the plaintiff must establish that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

Under the statute, the burden rested on the plaintiff to prove that she met the conditions of eligibility fixed by the Act before she would be entitled to the benefits for which she applied. 42 U.S.C.A. § 416(i) (1), 42 U.S.C.A. § 423(c) (2). Furthermore, in this proceeding before the court, the decision of the Secretary, if supported by substantial evidence, is conclusive and must be affirmed. 42 U.S.C.A. § 405(g). "Substantial evidence" is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660; Aaron v. Fleming, D.C., 168 F.Supp. 291, 294. The question of what amounts to substantial evidence is a matter of law for the reviewing court to determine upon a considered evaluation of the whole record. Hayes v. Celebrezze (C.A.5, 1963) 311 F.2d 648, 651.

The findings of the hearing examiner are set forth by him in his decision as follows:

"(1) The claimant suffered from cancer of the colon from which there were regional metastases and underwent surgery in the first part of 1958.

(2) There has been no recurrence of cancer since the claimant's operation.

(3) The claimant's cancer condition was corrected by surgery and is not an impairment which would prevent the claimant from engaging in substantial gainful activity.

(4) The claimant suffered from adenoma of the left breast which was excised and found to be benign.

(5) The claimant suffered from gastritis which has responded to medication and treatment.

(6) The claimant suffers from a nervous condition as a result of her fear of recurrence of cancer, however, her nervous condition is not of such severity as to constitute a 'disability' within the meaning of the Social Security Act, as amended.

(7) The claimant's impairment, or impairments considered in combination, were not so severe during the time she last met the special earnings requirements of the Act (March 31, 1963) as to prevent her from engaging in substantial gainful activity.

(8) At the time the claimant last met the special earnings requirements of the Act she was physically and mentally able to engage in work of the type in which she had previously been engaged.

(9) The claimant last met the special earnings requirement on March 31, 1963 and was not under a 'disability' as defined in the Social Security Act, as amended, at any time on or prior to this date."

The hearing officer has thus found that plaintiff suffered from "gastritis which has responded to medication and treatment" and suffers from "a nervous condition * * * not of such severity to constitute a 'disability' within the meaning of the Social Security Act, as amended." He likewise found that "the claimant's impairment, or impairments considered in combination, were not so severe during the time she last met the special earnings requirements of the Act (March 31, 1963) as to prevent her from engaging in substantial gainful activity."

The transcript is filled with testimony and evidence of plaintiff's disability.

Plaintiff was born in Butte, Montana, July 31, 1915, and had a high school education, but no specialized or vocational training. She is married and the mother of a son who does not live at home, and a daughter now 14 years of age. Mrs. Gilbert worked for about 17 years as a sales clerk and missed only three days of work during the last 13 years she was employed. She became ill in 1957 and in 1958 she was operated on for the removal of a malignant cancer of the colon. Since then she has worked only one week at her previous employment.

Plaintiff testified she has been unable to work since 1958 and that the major activity she has been able to engage in at home is cooking for her small family and placing clothes in an automatic washer and hanging them to dry. Her daughter washes the dishes and does the housework. She rests during most of the day.

Dr. Colwell reported in 1960 that plaintiff suffered from post operative statis, and from hypertrophic gastritis. In 1963 he reported her gastritis had shown some improvement, but in 1964 (Ex. 27) he found "that this patient has a definite disability because of severe hypertrophic gastritis and the bowel problem that she has subsequent to her surgical excision. There is also a substantial emotional problem present."

On June 19, 1964, plaintiff was examined by a psychiatrist, Dr. Holmes, who found "Her main difficulty seems to be a hypochondrical attitude about her many illnesses and operations. This all seems to have come on her since her operation in 1957.

"*Diagnosis*: In the absence of physical examination findings by her doctor, I would feel that her present symptoms might by psychoneurotic, with symptoms involving the gastro-intestinal, cutaneous, and circulatory systems.

"*Prognosis*: Would be guarded, inasmuch as these symptoms have been present over a period of years. Even though they might be neurotic in origin, they cause the patient a great deal of discomfort and suffering. No psychiatric dynamics were evident in this interview."

The following additional excerpts are found in the report of the hearing examiner:

"A letter from Dr. W. A. Burke, Jr., of the Murray Clinic, Butte, Montana,

dated August 20, 1965, addressed to counsel for claimant states that he examined the claimant on August 20, 1965, and at present she has a urinary tract infection. Examination failed to reveal any evidence of recurrence of residual malignancy. However, Dr. Burke felt it was definitely a possibility in view of the operative findings in 1958 and he felt that she could never be gainfully employed (Exhibit No. 37)."

"A letter from Dr. W. E. Swartz, a general and thoracic surgeon, addressed to counsel for claimant, dated September 25, 1964, stated that the claimant recently was found to have an esophageal hiatus hernia with reflux esophagitis, a chronic duodenal ulcer and a poorly functioning gall bladder with multiple stones. She was operated on August 21, 1964 and found to have the above condition and was treated by a bilateral vagotomy, a cholecystectomy, repair of the hiatus hernia and a pyloroplasty. Complete examination of the abdomen at that time failed to reveal any evidence of recurrent tumor insofar as metastatic disease to the liver or the lymph nodes in the posterior aspect of the abdomen. She did have multiple adhesions over the left abdomen which were freed-up. Subsequent to this surgery she felt a great deal of improvement and her vital functions improved rather markedly. It was Dr. Swartz' opinion that because of Mrs. Gilbert's very severe malignancy and the ever present possibility of a recurrence (because it had spread beyond the confines of the lesion within the colon at the original operation) and because of her recent surgery which was of major significance, there was no question but what Mrs. Gilbert 'would never work and should not be expected to, insofar as Social Security Benefits'. (Exhibit No. 33)."

"Another letter from Dr. W. E. Swartz, dated March 29, 1965 addressed to Dr. Berg of the Division of Rehabilitation, Helena, Montana, stated that on most recent examination the claimant was doing quite well. There had been some slight weight gain and she continued to improve insofar as her general well-being. There had been no complications other than persistent metromenorrhagia, for which she was seen by Dr. H. B. Campbell, a gynecologist, who felt she should probably have a diagnostic and therapeutic dilatation and curettage. She continued to be free of any symptoms referrable to her pre-existing carcinoma of the colon. There was a new nodule in the right breast, which if persistent should be removed. She complained of distress on swallowing a large bolus of food, which Dr. Swartz explained was caused by the intentional narrowing of the esophagus in repairing the hernia. She was instructed to masticate her food well. The complete examination was non-revealing, her wounds were well healed, blood pressure 120/70, chest clear and no masses in her abdomen. An upper gastrointestinal series was done which showed nothing more than what was felt to be deformity secondary to the pyloroplasty and mobilization of the stomach for esophageal hiatus herniorrhaphy. (Exhibit No. 34.)"

Her illnesses and malignancy date back to March, 1963, and continue at present time and are expected to continue indefinitely in the future, according to Dr. Swartz (Exhibit 36).

In his evaluation of all this evidence, the examiner has concluded that plaintiff does not suffer a disability because her cancer has not recurred; her gastritis has responded to medication and treatment so she no longer suffers from gastritis (Finding #5); her nervous condition has no psychiatric dynamics, so her nervous condition is not of such severity as to constitute a disability.

His evaluation of the medical evidence is completely inadequate. It is true that Dr. Swartz expressed the opinion at one time that plaintiff's gastritis and ulcer had responded to treatment, but that

doesn't mean anything unless you consider all of his evidence. Nowhere does he suggest that she does not still suffer from gastritis. He concluded that "her illnesses and malignancy date back to March, 1963, and continue at the present time and are expected to continue indefinitely in the future."

Dr. Colwell reported in 1964 that plaintiff has "a definite disability because of the severe hypertrophic gastritis". He reported the existence of the gastritis in 1960.

Dr. Colwell reported plaintiff had a substantial emotional problem and the government had her examined by a psychiatrist, Dr. Holmes. It is true that Dr. Holmes said her nervous condition has "no psychiatric dynamics evident in this interview", but contrary to the hearing officer's summary of the evidence the doctor did not find that her condition would not constitute an impairment involving the nervous system within the meaning of the regulations (20 C.F.R. 404.1519). What "psychiatric dynamics" may mean is not entirely clear but it most probably means the plaintiff in the course of the interview was calm, reasonable, intelligent and relevant.

Dr. Holmes found affirmatively that plaintiff's main difficulty seems to be a hypochondrical attitude about her many illnesses and operations. This all seems to have come on her since her operation in 1957. "Diagnosis: In the absence of physical examination findings by her doctor, I would feel that her present symptoms might be psychoneurotic, with symptoms involving the gastrointestinal, cutaneous, and circulatory systems. Prognosis: Would be guarded, inasmuch as these symptoms have been present over a period of years. Even though they might be neurotic in origin, they cause the patient a great deal of discomfort and suffering." Dr. Holmes expressed no opinion about "disability" or ability to engage in work.

Dr. Patterson examined the plaintiff in May of 1964 and found she "appears well but nervous". He made no finding with reference to presence or absence of gastritis even though the plaintiff was referred to him by the government on the basis of Dr. Colwell's report which describes a disability because of "severe hypertrophic gastritis". He did find she was convinced that "she is having a recurrence of her malignancy". He offered no opinion with reference to disability or ability to work.

Dr. Burke, the only medical witness who testified, stated that from his examination and a review of the reports of Dr. Swartz he was of the opinion plaintiff had not been able to work since 1958 and that her condition would continue to be so in the future.

It is abundantly clear that the hearing officer thought that he was authorized by the law to ignore the professional opinions of the doctors. The court has faced this problem before. Judge Jameson, in Joki v. Flemming, D.C.Mont. 1960, 189 F.Supp. 365, said:

"While it is true, as defendant contends, that the administrative agency has the ultimate responsibility of determining the issue of 'disability' as defined by the statute, expert opinions of qualified physicians on this issue, though advisory and not controlling, should be considered with all other relevant evidence by the finder of facts."

This court has in many cases adopted the language of Hill v. Fleming, 169 F.Supp. 240, 245:

"Expert opinions on such issues are admissible evidence to be considered by the fact finder, but when they are not repudiated in any respect by substantial evidence to the contrary, an adverse decision on these ultimate facts should be set aside as based on 'suspicion' and 'speculation'."

In the instant case qualified medical opinions have been submitted to the effect that plaintiff has been and is unable to work. No doctor who examined plaintiff expressed a contrary opinion and there is otherwise in the record no substantial evidence contrary to the ex-

pressed opinions. The examiner's decision can only be based on suspicion and speculation, as the record does not disclose he is qualified to express an expert opinion.

██ From all the evidence it is clear plaintiff cannot engage in her previous work of sales clerk. And there is no substantial evidence in the record that she is capable of engaging in any other substantial gainful activity. The fact that she can do the family cooking and put the family washing in a machine and then hang it to dry is not substantial evidence to support a conclusion that she was on March 31, 1963, or since, able to engage in any substantial gainful activity in the light of her limited education and experience.

██ Upon a review of the entire record I conclude that there is no substantial evidence to support the examiner's decision. Pursuant to Rule 11(b) of the local rules of this Court, plaintiff will prepare an appropriate judgment in accordance with this opinion.