Valborg **BERVEN**, Appellant,

v.

John W. **GARDNER**, Secretary of Health, Education and Welfare, Appellee.

No. 19379.

United States Court of Appeals
Eighth Circuit.

Sept. 4, 1969.

Tony Weisensee, of Myrabo & Weisensee, Canton, S. D., for appellant.

David V. Vrooman, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; Harold C. Doyle, U. S. Atty., and Ronald Clabaugh, Asst. U. S. Atty., on brief.

Before VOGEL, MATTHES and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

We are concerned here with an appeal from the District Court's summary judgment which affirmed a ruling by the Secretary of Health, Education and Welfare that Valborg Berven, appellant, is not entitled to disability benefits under the Social Security Act. The single question presented on appeal is whether the Secretary's determination, affirmed by the District Court, that appellant was not disabled within the purview of 42 U.S. C.A. § 423(c) (2), as amended July 30, 1965, is supported by substantial evidence.

On April 22, 1964, appellant filed an application to establish a period of disability and to obtain disability benefits as provided in 42 U.S.C.A. § 423. The term "disability" is defined in 42 U.S. C.A. § 416(i) (1), as amended in 1965, as the

" * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted

or can be expected to last for a continuous period of not less than 12 months * * *."

Appellant's application to establish disability while she had insured status, that is, June 30, 1959, or prior thereto, was considered and reconsidered by the Social Security Administration. The claim was denied. At appellant's request, a hearing was held on March 2, 1966, which she attended with counsel. The Hearing Examiner found that the appellant was not under a disability at the time she had insured status. The Examiner's decision was affirmed by the Appeals Counsel of the Social Security Administration. Thereafter appellant brought this action against the Secretary pursuant to 42 U.S.C.A. § 405(g). Upon review, the United States District Court for the District of South Dakota held there was substantial evidence to support the final determination of the Secretary and accordingly granted the Secretary's motion for summary judgment. This appeal followed.

Appellant is a naturalized citizen who was born on October 5, 1908, in Orange, Denmark. She is presently the wife of Tillman Berven and has four children by a prior marriage. In August 1956 she began her employment at the Sunshine Bakery in Sioux Falls, South Dakota, where she remained employed until June 1959.

When Mrs. Berven began her work at the Sunshine Bakery in Sioux Falls, she was having no particular physical difficulty. Sometime during the course of her employment, however, she began experiencing serious difficulties in balance, muscular coordination and emotional stability. She stated that at the end of this employment she had difficulty with coordination, had no feeling in her left hand and had problems lifting anything very heavy. She testified that she did not pay much attention to her coordination problems at the time because "it came on [her] so gradual and [she] was so busy working and putting [her] sons through college that [she] didn't give it much thought." With regard to her difficulty in lifting heavy objects, she testified that she "didn't say anything because [she] had [a] son who had three years left in college, and [they] needed the money." [1]

1. At the hearing she testified as follows:
"Q When you first started at Sunshine were you otherwise a strong and normal woman? Could you lift anything that another woman your size could lift?
"A Oh, yes.
"Q Then toward the last year or so in which you were working for Sunshine you began experiencing difficulty in lifting?
"A Yes. And I didn't say anything because I had my son who had three years left in college, and we needed the money.
* * * * *
"Q Have they been more pronounced in recent years?
"A Oh, yes. But as many doctors as I went to, they couldn't find anything wrong with me until Dr. Burleigh sent me to a neurosurgeon, Dr. Church. And he told me that this had been coming on for all these years.
"Q But you had been experiencing these things all these years before you went to see the doctor?
"A Yes. I kept trying to get relief and trying to get help, and my left leg was turning—it didn't coordinate at all with the rest of my body. I looked like a drunk coming down the street.
"Q Can you walk by yourself now?
"A I could until I fell, and that wasn't without help, leaning on the table.
"Q Back in 1959 or 1958, did you have any difficulty in walking?
"A Well, if I held on to things I got along pretty good.
* * * * *
"Q Did you exeperience that before 1959?
"A Not near so much. Just a little. Just enough to know that there was something wrong, but you wouldn't know what it was.
"Q You did notice it, though, before 1959?
"A Yes.
"Q You never went down to the State Employment Office to apply for some other work after 1962, is that correct?
"A. There wasn't any use.
"Q You didn't feel that you could hold a job?
"A I wasn't capable."

Mrs. Berven next attempted to work in a grocery store, but terminated that employment after two days because she could not lift trays of meat.

After collecting unemployment compensation for a period of time, appellant worked part time at the Veterans Canteen Service at the Veterans Hospital, working one day in November 1959, four days in December 1959, one day in February 1960, and five days in March 1960. Her duties consisted mainly of preparing salads and sandwiches, operating a dishwasher and posting daily menus. She had difficulty posting the menus due to dizziness while standing on a stool. Appellant gave up this employment because, as she stated, she was "unable to handle the job". Subsequently appellant worked on April 5, 1960, as a kitchen helper at the Veterans Administration Hospital but gave up because "she found the work too hard". She testified that she had difficulty in carrying trays.

During the nine-month 1961–62 school year Mrs. Berven did some housework and babysitting for a Mrs. Arnold Auch, a school teacher. Appellant worked five days a week during the school year and was paid $5.00 per day. The only difficulty she experienced in this position was that she had to use the handrail in order to go up and down the basement stairs.

From June 30, 1959, when appellant last met the earnings requirements, to April 22, 1964, the date she filed her application herein, Mrs. Berven was hospitalized three times. On August 11, 1959, she was confined in a hospital for treatment of low back strain. On June 19, 1962, she was hospitalized for ten days for intervertebral disc syndrome and osteoarthritis of the spine. On February 25, 1964, she was admitted to the hospital for neurological observation and at the time of her discharge on March 5, 1964, her condition was diagnosed as "cerebral atrophy cause unknown".[2]

Appellant's attending physician was Dr. Robert G. Fisk of Dell Rapids, South Dakota. He attended Mrs. Berven since 1953. He concurred in the findings of Dr. Church and Dr. Smith of Sioux Falls in that she is presently suffering from "arteriosclerotic deterioration". He testified that her "severe condition" was a gradual process developing "over a long period of years," that the condition from which Mrs. Berven suffers had begun and was in its beginning stages before 1959.[3]

Dr. Vernon H. Cutshall of the Donahoe Clinic, Sioux Falls, South Dakota, certified that as of September 14, 1966, the appellant had been under his care for several months, that:

"She had a rather advanced, moderately severe neurological disease which was diagnosed by Doctor A. B. Baker and his department as a demyelinization process. This process has apparently been going on for a minimum of ten years and possibly up to 15 years. To my knowledge, she has been quite incapacitated to do her ordinary work for the past ten years."

Furthermore, Dr. A. B. Baker, Professor and Director of the Division of Neurology of the University of Minne-

---

2. During this period several doctors examined appellant and all stated or lent credence to the theory that her medical problems commenced on or before June of 1959 with the exception of Dr. Church, who examined her in early 1964 and stated her illness had been "progressive for approximately four years".

3. Dr. Fisk stated in two medical reports that Mrs. Berven's condition developed on or before June of 1959. He stated the exact condition was not diagnosed until 1964 due to the slow process of neurological changes in the brain, and in the same report he stated that the slow process and chronic nature of cerebral changes made it entirely possible that the disability began by July of 1959. In one report he did state that the present illness did not occur until about March of 1963. Obviously there is a contradiction between the reports. Dr. Fisk was not asked to explain this when he was a witness at the hearing but the specificity and details of the other statements indicate clearly that "about Mar. 1963" was an oversight or error in completing that part of such report.

sota, reported to Dr. Cutshall in his letter of September 2, 1966, that:

"* * * It was apparent from our examination that this patient had a fairly wide spread involvement of the nervous system, and that because of the intermittent history that she probably had a demyelinating process."

Finally, Dr. B. G. Church of Sioux Falls, South Dakota, lent credence to the prior testimony after he had treated the appellant in February and March of 1964, and stated that the appellant's illness was progressive for a period of about four years. His diagnosis was "cerebral degenerative disease, unclassified", that it was "expected to be progressive".

Lay testimony in general supported the contention of the appellant and opinions of the experts that she became disabled within the purview of the statute on or before June 1959. Minnie Daggett testified that she knew the appellant since 1956, immediately after she went to work for Sunshine. She lived directly across the street from the appellant and during 1958 and 1959 she saw Mrs. Berven every day. She stated that Mrs. Berven during this period had difficulty walking and would run into things and stagger before the summer of 1959, sometimes forcing the witness to help appellant walk back and forth across the street. She added that since then the condition had become much worse but that "before the summer of 1959 she would run into things and stagger".

Mrs. Adeline Peterson, who knew the appellant for 25 years and saw her an average of once or twice a week in the spring of 1959, said Mrs. Berven then had trouble holding and picking up objects, and frequently staggered when she walked.

Appellant's husband generally supported the testimony of the other fact witnesses. Not only did he support her general problems of coordination but he also said she was even unable to stand up or walk one morning when she got up from bed in the fall of 1958.

Therefore, the sum and substance of this rather unsatisfactory record is that what eyewitness and medical testimony there is tends to support appellant's claim that she was disabled on or before June 1959.

First, and probably most important, we have Dr. Fisk, the general practitioner who had attended Mrs. Berven since 1953, stating quite positively that appellant became unable to work in June of 1959, and that "Valborg Berven was totally disabled 6/59 or before because: of the onset of degenerative changes in the cerebrum". Obviously Dr. Fisk's diagnosis and his opinion followed his reference of the appellant to Dr. B. G. Church, specialist in neurosurgery, who examined and treated the appellant in February and March of 1964 and stated that her illness was "progressive for about four years", and his diagnosis consisted of "cerebral degenerative disease unclassified" and that it was "expected to be progressive". These statements, together with that of Dr. Cutshall to the effect that "to my knowledge she had been quite incapacitated to do her ordinary work for the past ten years", would appear to be the only positive medical testimony bearing upon the claimed time of disability, June 1959 or before. In addition, there is of course the report of Dr. Baker who examined the appellant at the University of Minnesota and gave his diagnosis in his letter of September 2, 1966. No statements made by him would contradict those of Dr. Fisk, Dr. Cutshall and Dr. Church but are generally supportive in nature.

■ Where all of the medical testimony or expert opinions support or tend to support the claim of the appellant that she was disabled within the meaning of the statute in and prior to June 1959 and no medical or other testimony appears to the contrary, then we believe that a finding by the Secretary to the effect that disability was not established is not supported by substantial evidence and must be set aside. In Ross v. Gard-

ner, 6 Cir., 1966, 365 F.2d 554, 559, the court specifically held that:

> "Where uncontradicted medical evidence tended to establish disability of claimant, the decision of the Secretary denying benefits was not supported by substantial evidence."

The court in Celebrezze v. Warren, 10 Cir., 1964, 339 F.2d 833, held likewise and stated, at 838:

> "On the basis of the medical evidence submitted tending to establish Warren's disability and the lack of contrary medical evidence, together with the uncontradicted evidence of continuing severe migraine headaches, the Secretary's decision was not supported by substantial evidence."

In Pollard v. Gardner, W.D.Mo.W.D., 1967, 267 F.Supp. 890, Chief Judge Becker, after meticulous and comprehensive consideration of the record in what might be termed a related case, stated, at 908:

> " * * * It is recognized that expert opinion on the ultimate question of the extent of disability is not binding upon the defendant. (Citations omitted.) However, it is also recognized that a finding contrary to uncontroverted expert opinion should be set aside as being conjectural and not supported by substantial evidence and speculative."

See, also, Nelms v. Gardner, 6 Cir., 1967, 386 F.2d 971.

In Combs v. Gardner, 6 Cir., 1967, 382 F.2d 949, the court stated, at 956–957:

> "Substantial evidence means more than a scintilla; it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. (Citation omitted.) It has been noted that the Social Security Act is remedial in nature; and that a liberal construction in favor of disability, if such is reasonably made out, is therefore required. (Citations omitted.)

> " * * * 'Substantial evidence does not sustain a Hearing Examiner's decision when it is based almost exclusively on a medical report of a physician making a single examination of a claimant, when two doctors who treated him over a period of years stated that he was totally incapacitated.' Miracle v. Celebrezze, supra, [6 Cir., 1965, 351 F.2d 361] 351 F.2d at 379."

■ Attempt has been made by the Secretary to capitalize on the fact that a true and correct diagnosis of the appellant's condition was not made for some years after 1959. A similar position was taken by the Secretary in Murphy v. Gardner, 8 Cir., 1967, 379 F.2d 1. Rejecting the argument, this court, through Judge Heaney, pointed out that the doctor's opinion placed the disability within the insured period and several fact witnesses, including the deceased's spouse, corroborated the medical opinion. The court also held that the disability could be logically inferred by the severity of the illness at the time of the hearing.[4]

■ The Examiner also places substantial reliance for his conclusion that the appellant was not disabled within the meaning of the statute in June 1959 on the fact that during the school year of 1961–62 she was employed as a babysitter and housekeeper, for which she received $5.00 per day for five days a week. We think the reliance to be misplaced. This court has already faced the question and decided it in the negative. Murphy v. Gardner, supra, 379 F.2d 1, at page 3, f.n. 2. Since the Sixth Circuit, in Jarvis v. Ribicoff, 6 Cir., 1963, 312 F.2d 707, stated the capacity to wash dishes and do similar light duties does not prove the ability to engage in substantial gainful activity, courts have consistently held that mere performance of light housework does not destroy a disability claim. E.g., Gilbert v. Gardner,

---

4. At the time of the hearing, March 2, 1966, appellant was unable to dress herself or bathe without assistance. She could do no housework and was unable to assist in the preparation of meals. The trial court stated, "Claimant's condition has continued to deteriorate, and the Court has no doubt that she is presently totally disabled and has been so for some time." D.C.S.D.So.Div., CIV67-15S.

D.C.Mont., 1966, 254 F.Supp. 124, where the court, in reversing the Examiner's decision, said at 130:

"From all the evidence it is clear plaintiff cannot engage in her previous work of sales clerk. And there is no substantial evidence in the record that she is capable of engaging in any other substantial gainful activity. The fact that she can do the family cooking and put the family washing in a machine and then hang it to dry is not substantial evidence to support a conclusion that she was on March 31, 1963, or since, able to engage in any substantial gainful activity in the light of her limited education and experience."

See, also, Davis v. Celebrezze, D.C.E.D. S.C., 233 F.Supp. 292; Mims v. Celebrezze, D.C.Colo., 217 F.Supp. 581.

We conclude that the Secretary's determination is not supported by substantial evidence and that the appellant was completely and permanently disabled within the purview of the statute during a time at which she had insured status, and that she is therefore entitled to disability benefits. Reversed and remanded with directions to enter a summary judgment for the appellant.