Ian M. CUMMING, Plaintiff-Appellee,

v.

Glendon E. JOHNSON et al.,
Defendant-Appellants.

No. 77–3871.

United States Court of Appeals,
Ninth Circuit.

Nov. 19, 1979.

Kenneth C. Bornholdt, MacDonald, Halsted & Laybourne, Los Angeles, Cal., for plaintiff-appellee.

Edwin Paul, Gray, Gorham & Paul, Los Angeles, Cal., for defendant-appellants.

Before GOODWIN and SNEED, Circuit Judges, and JAMESON *, District Judge.

GOODWIN, Circuit Judge.

Glendon Johnson appeals a judgment of specific performance of an oral stock transfer agreement between Johnson's brother Franklin, who was acting as Johnson's agent, and the plaintiff, Ian Cumming. Johnson asserts that the district court lacked subject matter jurisdiction,[1] that enforcement of the oral agreement was barred by the statute of frauds, and that his wife's community property interest in the disputed stock could not be transferred under the trial court's order. We affirm the district court.

Johnson and his wife, Bobette Johnson, are Texas residents. Cumming is a Utah resident. All three are shareholders in Terracor, Inc., a Utah corporation. Cumming has been a director of Terracor since March 1970 and president of the corporation since September 1971.

In 1973 Terracor was involved in litigation with Avco Financial Services, Inc. Avco and other plaintiffs brought three actions against Terracor, naming Glendon, Franklin, and Bobette Johnson and others as individual codefendant-guarantors. In order to settle this litigation, Franklin Johnson reached an oral agreement with Cumming. Under this agreement, Glendon and Franklin Johnson and Roger Boyer, a third Terracor shareholder named in the Avco litigation, promised to transfer their Terracor stock to Cumming in return for Cumming's personal undertaking to settle the Avco suits.

Cumming had not been named as a defendant in the Avco litigation, but his personal participation in the settlement negotiations became a necessary condition of Avco's agreement to settle. One of the

---

\* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. In personam jurisdiction was obtained in the Central District of California and the parties proceeded in this diversity case under California law. California was also the place in which shares had been deposited in escrow, and in which other performance of the agreement would take place.

terms of this settlement required Cumming to personally pledge to Avco 400,000 shares of Terracor stock that he owned and to give Avco a $550,000 note in return for various considerations and property. As part of the settlement, the parties to the Avco litigation also executed an Agreement of Dismissal and Release.

After the final settlement of the Avco litigation, Franklin Johnson and Roger Boyer transferred their Terracor shares to Cumming. Glendon Johnson, however, refused to transfer the 132,563 shares of Terracor stock, represented by Terracor share certificate No. 1005, that are registered in his name, arguing that his brother Franklin lacked the authority to bind him under the November 1973 oral agreement and that, even if Franklin Johnson was authorized to act as his agent, the oral agreement was unenforceable.

Cumming filed this diversity action to obtain possession of certificate No. 1005, which was in escrow in a Los Angeles bank. The district court in due course entered the challenged judgment divesting Johnson of title to the Terracor shares and vesting title in Cumming.

■ Johnson's contention that the district court lacked subject matter jurisdiction is wrong. The amount in controversy does exceed $10,000. While the stock sought to be recovered by Cumming had a negative book value at the time this action was filed,[2] the trial court heard testimony that a large block of Terracor stock had been sold for 20 cents a share in 1973, when the company's financial situation was similar to its condition at the time of this litigation. Taking this figure as a rough estimate of the "market value" of the shares (Terracor was not traded publicly), it is apparent that the value of the disputed stock exceeded $10,000.

■ Johnson argues next that, even if the district court had subject matter jurisdiction, the oral stock transfer agreement should not be enforced because it violates the statute of frauds. The trial court found that Cumming's complete performance of his obligations under the oral contract took the contract out of the statute of frauds. We agree.

■ Under the section of the California Commercial Code which defines the statute of frauds governing securities transactions, a contract for the sale of securities may be enforced if "[d]elivery of the security has been accepted or payment has been made * * *." Cal.Com.Code § 8319(1)(b) (West 1964).[3] The district court relied on this provision and concluded that Cumming's participation in the Avco settlement constituted "payment" for the disputed Terracor shares. Johnson disputes this finding, contending that Cumming's performance was not payment because no money or other property passed directly to him.

California law does not support so restrictive a definition of "payment". While it is true that section 8319 of the California Commercial Code refers to section 1478 of the California Civil Code as a definitional

---

2. Terracor's liabilities were said to exceed its assets by $33 million at the time this action was filed.

3. Cal.Com.Code § 8319 (West 1964), entitled "Statute of Frauds", reads as follows:

"(1) A contract for the sale of securities is not enforceable by way of action or defense unless

"(a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"(b) Delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

"(c) Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt.

"(2) A contract relating to the purchase or sale of securities between a broker acting as an agent and his principal is not subject to the provisions of this section. (Stats.1963, c. 819, § 8319)."

cross-reference and that that section defines payment as "[p]erformance of an obligation for the delivery of money only", California courts have broadly construed this definition in applying Cal.Com.Code § 8319 and its companion provision, Cal. Com.Code § 2201, the statute of frauds for sales.

In *Sousa v. First California Co.*, 101 Cal. App.2d 533, 225 P.2d 955 (1950), the court defined "payment" as follows:

> "Payment is the performance of an obligation for the delivery of money, § 1478, Civil Code. The performance may take place by the delivery and acceptance of other things of value instead of money, but there is only payment when the money or other things of value are given and accepted in discharge of the obligation in whole or in part. * * *

> "An inspection of the principal dictionaries shows that the general meaning of 'payment' is * * * the discharge of an obligation or the giving of compensation. * * *" 101 Cal.App.2d at 537, 225 P.2d at 959–60 (citations omitted).

*See Strain v. Security Title Insurance Co.*, 124 Cal.App.2d 195, 268 P.2d 167 (1954).

We conclude that under the broad "discharge of an obligation" language of *Sousa v. First California Co., supra,* Cumming's personal participation in the settlement constituted "payment" under Cal.Com.Code § 8319(1)(b). Johnson received something of value: release from personal liability in the settlement of the Avco litigation. There is no serious dispute that Cumming produced the settlement. The settlement was the precise benefit which Johnson sought in contracting, through his agent, with Cumming.[4] Whether Johnson received this benefit directly from Cumming or indirectly, as a result of Cumming's actions, is immaterial.[5]

Johnson also raises a related argument, that even if Cumming did transfer something of value (to Avco) in effecting the settlement, Cumming made no "payment" to Johnson. Cumming, of course, gave consideration to third parties, the Avco litigation plaintiffs, in return for the settlement.[6] But part of Avco's settlement, given in exchange for Cumming's performance, benefited Johnson.

Looking to California law, we find no cases dealing with payment to third parties under Cal.Com.Code § 8319. On at least one occasion, however, a California court has held that delivery of goods to a third party designated by the buyer and acceptance by that party constituted "acceptance" by the buyer, taking the contract out of the sales statute of frauds. *Dairyman's Coop-*

---

**4.** This construction of "value", as applied to California Commercial Code § 8319(1)(b), is supported by decisions in at least two other jurisdictions. In *Baldassarre v. Rare Metals Derivatives, Inc.*, 444 Pa. 100, 282 A.2d 262 (1971), two research chemists resigned their positions and joined a new corporation in reliance on oral promises that they would receive a percentage of ownership in the new corporation. The Pennsylvania Supreme Court found that, if the oral agreement was a "sale of securities" for purposes of U.C.C. § 8–319, the chemists, by leaving their former positions and joining the corporation, had made "payment" for the shares. And in *Bowers Steel, Inc. v. Debrooke*, 557 S.W.2d 369 (Tex.Civ.App.1977), a Texas court held that the plaintiff, who had become an officer of the defendant corporation in reliance on defendant's oral promise to pay him 20 per cent of the corporation's stock, had made "payment" by accepting the position.

**5.** Johnson argues, tangentially, that Cumming's promise to become "personally involved" in the litigation was too vague to be enforceable and, consequently, the oral agreement was void for want of mutuality. While the expression "personally involved" is admittedly indefinite, the record demonstrates that Avco insisted on Cumming's personal participation as a guarantor as a condition of settlement. Within a week after Cumming's agreement to personally participate in the settlement, the litigation, which had taken over a year, was settled and Johnson was relieved of his obligation as a guarantor of Terracor in that litigation. It is apparent that Johnson and the two other promisors who transferred their shares to Cumming after the settlement got what they bargained for.

**6.** We note that were we to endorse this definition of "payment", we would be compelled to find any oral third party contract which required buyer to deliver the purchase price to some third party designated by seller invalid under the statute of frauds, regardless of buyer's performance. We decline to do so.

*erative Creamery Ass'n v. Leipold,* 34 Cal. App.3d 184, 188, 109 Cal.Rptr. 753, 755–56 (1973). The circumstances in that case are sufficiently analogous to those here, where the Avco plaintiffs were designated by one contracting party (Johnson) through his agent, as the recipients of the other contracting party's performance-"payment", to warrant rejection of Johnson's arguments.

Johnson next argues that the district court could not order specific performance of the stock transfer agreement, because his wife Bobette has a community property interest in the disputed shares that could not be conveyed without her consent, and because Mrs. Johnson was not a party to this litigation. As will be seen, the success of these arguments hinges on whether Cumming had actual or constructive notice of any interest Bobette Johnson had in share certificate No. 1005.

■ Bobette Johnson had a presumptive community property interest in the Johnson Terracor shares. "Property possessed by either spouse during or on the dissolution of marriage is presumed to be community property." Tex.Fam.Code Ann. § 5.02 (Vernon 1974). Glendon Johnson possessed the shares during his marriage. Because Cumming offered no evidence that Johnson acquired the shares with premarriage assets, or other rebuttal, the statutory presumption controls. Not only did Mrs. Johnson have a community property interest in the disputed shares, but she had a joint control interest as against her husband. Texas Family Code § 5.22 defines the instances, as between spouses, in which community property is under the sole management of one spouse, and none of those exceptions applies here.[7]

■ The purpose of section 5.22 of the Texas Family Code was to eliminate unilateral conveyance and virtual representation of one spouse's community property interests by another. *See* Comment, 6 Tex.Tech. L.Rev. 1185 (1975); Note, 52 Tex.L.Rev. 1410 (1974). Thus, in most cases, one spouse cannot transfer the other's interests in property without his or her consent, and a court cannot determine the status of community property in the absence of either spouse. *See Williams v. Saxon,* 521 S.W.2d 88 (Tex.Civ.App.1975); *Cooper v. Texas Gulf Industries,* 513 S.W.2d 200 (Tex.1974).

If our inquiry were to end here, the district court could not compel the transfer of the Terracor shares. While Franklin Johnson's power of attorney allowed him to act for both Glendon and Bobette Johnson, he contracted with Cumming only to convey Mr. Johnson's shares. The record shows no mention of Mrs. Johnson's interest in the oral agreement, and, as noted, Mrs. Johnson was not joined as a party defendant in these proceedings.

■ There are, however, exceptions to the statutory presumption of joint control which apply not between spouses, but between spouses and innocent third parties. The district court relied on one of these exceptions, Tex.Fam.Code § 5.24(a), which raises a counter-presumption of sole control

---

7. Tex.Fam.Code § 5.22, entitled "Community Property: General Rules", provides as follows:

   "(a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:
   (1) personal earnings;
   (2) revenue from separate property;
   (3) recoveries for personal injuries; and
   (4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.
   (b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement.
   (c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney in writing or other agreement."

if property is held in one spouse's name.[8] The court found that, for purposes of oral agreement between Cumming and Franklin Johnson, Terracor certificate No. 1005 was community property under Glendon Johnson's sole control. It is not disputed that the Terracor shares were registered in appellant's name alone and that certificate No. 1005 bore only his signature. Consequently, a presumption of sole control, allowing Johnson to unilaterally convey and virtually represent his wife's interest, arises.

■ Johnson attempts to overcome this presumption by showing that Cumming was not an innocent third party entitled to invoke the statutory presumption of sole control because he had "actual or constructive notice" of Johnson's lack of authority over the shares. Tex.Fam.Code Ann. § 5.24(b)(1)(B) (Vernon 1974).[9] Johnson contends that Cumming had notice of Mrs. Johnson's interest in the Terracor stock both because of his position as Terracor's chief executive officer and because of his membership on an executive committee which sent Glendon and Bobette Johnson two letters promising them defense and indemnification in the Avco litigation. Johnson argues that the Terracor executive committee would not have addressed such letters to his wife unless its members believed that she was a Terracor shareholder.

While it is difficult to define what combination of facts constitutes actual or constructive notice in a given case, the facts relied upon by Johnson are not "of such a nature as to have reasonably excited the suspicions of a reasonably cautious man" under Texas law. *Houston Oil Co. of Texas v. Griggs*, 181 S.W. 833, 838 (Tex.Civ.App. 1915), *affirmed*, 213 S.W. 261 (Tex.1919). A review of Texas cases in other contexts reveals a strong presumption that "[s]tatutes regulating the general subject of notice are construed most liberally in favor of the party who is affected by the notice." *Phinney v. Langdeau*, 337 S.W.2d 393, 395 (Tex.Civ.App.1960), *quoted with approval* in *Exxon Corp. v. Raetzer*, 533 S.W.2d 842, 847 (Tex.Civ.App.1976). Two examples of this presumption appear in cases in which Texas courts concluded that third parties were without notice. *Houston Oil Co. of Texas v. Griggs, supra; Exxon Corp. v. Raetzer, supra.* In *Griggs*, the court held that a bank which purchased land from a Mrs. E. O. Griggs was not put on notice by the vendor's use of "Mrs." that the land might be encumbered by a community property interest; the court reasoned that use of the title "Mrs." on vendor's original deed did not necessarily mean that Mrs. Griggs was married at the time she acquired the land— she might have been widowed. *Raetzer* reflects an even more narrow concept of notice. There, a court concluded that a letter from a shareholder to a corporation stating that certain irregularities in handling the shareholder's investments had been discovered and that the issuer should advise the shareholder of "any change of ownership or status of the shares" did not give the issuer notice that the stock certificates had been lost or stolen.

In light of these precedents, appellant's argument that Cumming had notice of Mrs. Johnson's interest must be rejected. The fact that Cumming was president of Terracor does not, without more, give him notice

---

**8.** Tex.Fam.Code § 5.24, entitled "Protection of Third Persons", provides as follows:

"(a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in his or her possession and is not subject to such evidence of ownership.

"(b) A third person dealing with a spouse is entitled to rely (as against the other spouse or anyone claiming from that spouse) on that

spouse's authority to deal with the property if:

(1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

(2) the person dealing with the spouse:
(A) is not a party to a fraud upon the other spouse or another person; and
(B) does not have actual or constructive notice of the spouse's lack of authority."

**9.** *See* Tex.Fam.Code § 5.24(b)(1)(B), *supra* note 7.

that a shareholder's wife has a community property interest. As in *Houston Oil Co. of Texas v. Griggs, supra,* Cumming could reasonably have concluded that the shares had been purchased before the Johnsons' marriage or were bought with noncommunity assets. Similarly, Cumming's role in sending the Avco litigation indemnity letter to the Johnsons does not support a finding of notice; there could be any number of reasons for Mrs. Johnson's participation as a defendant-guarantor in the Avco litigation, including protection of "her husband's interest" in Terracor.[10]

Without evidence that Cumming had notice of Mrs. Johnson's interest, the statutory presumption of sole control is decisive. For purposes of the stock transfer agreement, the Terracor shares were under Glendon Johnson's sole management. He could unilaterally convey the whole community property interest in the stock to Cumming, through his agent, and he could virtually represent his wife's interest in the district court. Bobette Johnson's community property interest in the disputed shares does not prevent specific performance of the oral agreement.[11]

Finally, we consider four arguments Johnson raises concerning the invalidity of the stock transfer agreement.

First, Johnson asserts that because Cumming incurred no legal detriment in agreeing to become personally involved in the Avco litigation, the oral agreement to convey stock in return for such participation was not supported by consideration. Appellant contends that two letters in which Terracor promised to defend and in-

demnify the Johnsons in the Avco litigation required Cumming, in his fiduciary capacity as a member of Terracor's executive committee, to become personally involved in the Avco settlement. Moreover, Johnson argues that, even if Cumming was not obligated as a fiduciary to personally participate in the settlement, he had been informed in early November 1973, before the date of the oral agreement, that Avco had filed pleadings seeking to add him as a defendant. Johnson reasons that, because Cumming knew he was to be joined, he suffered no legal detriment in agreeing to become personally involved in the settlement.

While Cumming may have had a fiduciary obligation to, facilitate the settlement of the Avco litigation, any such duty was satisfied in the months prior to the stock transfer agreement when he successfully persuaded Avco to reduce its claim from $3 million to $1.5 million. Clearly, Cumming's fiduciary responsibilities did not require him to pledge unencumbered personal property—400,000 Terracor shares—as security for the settlement. Moreover, despite Cumming's knowledge that Avco was seeking to join him as a defendant at the time of the oral agreement, he was never actually joined as a defendant in the Avco litigation. Rather, the record before us demonstrates that Cumming sincerely believed, based on advice of counsel, that he was insulated from personal liability but voluntarily exposed himself to such liability, relying on Johnson's agent's promise. There was consideration for the stock transfer agreement.

---

10. *Williams v. Portland State Bank,* 514 S.W.2d 124 (Tex.Civ.App.1974), which appellant cites in support of his notice analysis, is easily distinguishable. There, a bank which sought to foreclose a lien on land held in the husband's name alone had been told by the husband that his wife refused to sign the first note covering the land and had subsequently executed a second note with the husband only. The court concluded that the bank's knowledge of the wife's refusal constituted actual notice of her interest in the land. Cumming's knowledge in this case was not of the same magnitude.

11. The nature of Bobette Johnson's property interest was litigated in her absence. While it is clear that Johnson could virtually represent his wife's interest once the district court found that he had sole control of the stock under Texas Family Code § 5.24, it is not apparent that he could represent her in the determination of the threshold issue: sole versus joint control. Still, at least in this case, the spouses' interests were consistent. And if Mrs. Johnson, who certainly had notice of the litigation, felt her interests were inadequately represented, she could have petitioned to intervene.

Johnson next contends that the terms of the Agreement of Dismissal and Release in the Avco litigation relieved him of any obligation to Cumming. We find that the essence of that agreement was settlement of claims by Avco-related plaintiffs, on the one hand, against Terracor-related defendants and guarantors, on the other, and that the agreement was effective only among the adversaries in the Avco litigation. Nothing in the 17-page document reflects any intent by the parties to resolve claims between individual plaintiffs or between individual defendants. Since Johnson and Cumming were nonadversaries, any claims between them were not affected by the settlement.

For the same reasons, we reject Johnson's claim that the language of the integration clause of the Avco litigation Agreement of Dismissal and Release [12] precluded presentation of evidence regarding the prior oral stock transfer agreement. There is no evidence that the dismissal agreement was intended to govern claims among nonadversaries in the Avco litigation; indeed, the terms of that document support the opposite conclusion.

Appellant's final argument, that his brother Franklin lacked authority to bind him under the oral agreement with Cumming, borders on the frivolous. The power of attorney under which Franklin Johnson acted authorized him to "manage, buy, sell, mortgage, lease, pledge, hypothecate, and deal in and with any and all * * personal property in which * * * [Glendon and Bobette Johnson] have an interest." It is difficult to imagine a more unqualified grant of authority.

The judgment of the district court is affirmed.

---

12. Paragraph 5(A) of the Agreement of Dismissal and Release provided, in relevant part, that "[e]ach party represents and acknowledges that this document contains the entire agreement of the parties."