**Gilberitta HAMM, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 80-404-N.**

United States District Court,
M. D. Alabama, N. D.

July 2, 1981.

Richard S. Lawrence, Montgomery, Ala., for plaintiff.

Barry Teague, U.S. Atty., Calvin C. Pryor, Asst. U.S. Atty., Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiff brought this action under the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain review in this Court of a decision of the Secretary of Health and Human Services, denying her claim for disability insurance benefits under Title II of the Social Security Act.

## PRIOR PROCEEDINGS

Plaintiff filed her application for disability on September 12, 1979, alleging that she became unable to work in February 1970. The application was denied. Plaintiff requested a hearing, and such hearing was granted before the administrative law judge on June 5, 1980. The administrative law judge also concluded that plaintiff was not under a disability. His decision became the final decision of the Secretary of Health and Human Services when approved by the Appeals Council on August 13, 1980.

## ISSUE

The only issue before this Court is whether the decision of the Secretary that plain-

tiff was not disabled on or before March 31, 1975, is supported by substantial evidence. After careful review of all the evidence and exhibits, this Court concludes that the Secretary's decision is not supported by substantial evidence. Although the scope of review in this Court is extremely narrow, our responsibility to reverse where the decision of the Secretary is not supported by substantial evidence cannot be ignored.

## FACTS

Mrs. Hamm is fifty-two years of age. She has an eleventh grade education with no special skills for the job market. Mrs. Hamm quit school in order to get married. She has two children, neither of whom is presently a minor.

Shortly after Mrs. Hamm left high school and married, she began work in a shirt factory and continued to work there for seventeen years as a pocket setter. The work involved running a sewing machine and setting pockets.

In 1970, Mrs. Hamm left work because of great pain in her arm and shoulder and loss of mobility of the arm and shoulder. She had suffered with this pain and lack of mobility since approximately 1967. The local doctors had diagnosed her problem as arthritic.

At the time she quit her job, she was unable to make production. She was forced due to pain to stop for periods of time, and the pain was so severe that she was reduced to tears on numerous occasions. At the time she quit her job she was not able to do even her routine housework. She could not sweep or do anything that required her to use the left upper extremity of her body. Her neighbors, her husband, and her children helped her with the house work, and she also had some hired help during most of this period.

Due primarily to her pain, Mrs. Hamm became very depressed. She was unable to sleep at night due to the pain. She sought psychiatric help for her depression.

In 1975, plaintiff's then treating physician, Dr. William Stewart, referred her to Dr. Paul Everest, an orthopedist specialist in Montgomery, Alabama. Dr. Everest carried out a biopsy in the left arm and shoulder area and it was discovered that Mrs. Hamm had a cartilagneous-like mass in the left arm and shoulder area. Dr. Everest's diagnosis was chondrosarcoma, a form of cancer which is normally a slow-growing condition in adults. Dr. Everest performed surgery and removed the growth. It was subsequently determined by Dr. Everest that Mrs. Hamm should have the bone removed. Surgery was performed in 1979 by Dr. William Dunham in Birmingham, and the bone was removed and a prosthesis was substituted. Dr. Dunham diagnosed Mrs. Hamm's arm and shoulder condition as a malignant sarcoma which has metastatic potential.

Dr. Stewart stated that as of August 14, 1974, when he first examined Mrs. Hamm, she was disabled for any kind of work. In his opinion, Mrs. Hamm had been totally and permanently disabled since 1969. Dr. Stewart points out that although he did not see Mrs. Hamm until 1974, she reported to him at that time that her pain had been persistent for a period of seven or eight years, gradually becoming worse. He stated that he is strongly of the opinion that the patient's pain even in 1970 and earlier was due to the cancer or sarcoma of the humerus.

Dr. Paul Everest stated in a letter which is part of the record as follows: "Our records do not contain a specific statement relative to her inability to engage in any substantial gainful employment prior to March 31, 1975. Based on the history and findings when first seen, it would seem plausible that with that much limitation of her shoulder, she would be unable to carry out the duties of any occupation requiring involvement of her left upper extremity."

## CONCLUSIONS

Although Mrs. Hamm contends that she has been disabled within the meaning of the Social Security Act since March of 1970 when she left work at the shirt factory because of the pain in her arm and shoulder

and her inability to use this part of her body, Mrs. Hamm did not file her application for disability insurance benefits until September 12, 1979. She met the special earnings requirement of the Act until March 31, 1975, and not thereafter. Mrs. Hamm, therefore, had the burden of proving that she had an impairment or combination of impairments that significantly affected her ability to perform work related functions on or before March 31, 1975. Because the medical evidence to a large extent relates to a period after March 31, 1975, the administrative law judge had the difficult task of determining in 1980 whether Mrs. Hamm was disabled on or before March 31, 1975.

The administrative law judge found:

"4. The medical evidence fails to establish that the claimant had an impairment or combination of impairments that significantly affected her ability to perform work-related functions on or before March 31, 1975. . . .

"6. The evidence fails to establish that the claimant was prevented from returning to her past relevant work activity on or before March 31, 1975."

This Court can find no evidence in this record to support such conclusions by the administrative law judge.

Mrs. Hamm has testified that she was forced to quit her job in 1970 due to her inability to use her left arm and shoulder. She testified that the arm and shoulder caused her great pain even prior to 1970. She had no other reason for leaving a job which she had performed for seventeen years than the pain and inability to use her arm sufficiently to enable her to meet her production quota. Her testimony concerning pain and inability to use her arm was supported by the very credible testimony of her husband and a neighbor.

The local doctors who were treating Mrs. Hamm for pain and loss of use of her arm and shoulder as long ago as 1967 were diagnosing her problem as arthritic. These doctors who were treating her in 1967 are no longer able to testify, but Dr. Stewart who began treating her in 1974, testified that

the now known fact that she had a malignant cancer in her arm and shoulder when she was examined by Dr. Everest in January 1976, causes him to believe very strongly that this condition was causing her pain and loss of use of her arm and shoulder in 1970 and earlier. The medical evidence is without dispute that the type of cancer which Mrs. Hamm had is a type that develops slowly in adults.

In this case, the opinion expressed by Dr. Stewart that Mrs. Hamm was disabled for any kind of work as of August 14, 1974 and earlier is not disputed by any medical or lay testimony. On the contrary, the lay testimony and the testimony of Mrs. Hamm is supportive of Dr. Stewart's conclusion, as is the opinion of Dr. Everest.

In the recent case of *Smith v. Schweiker*, 616 F.2d 1075 (5th Cir. 1981), the court pointed out the criteria for judging whether substantial evidence is present to support the Secretary's decision: "(i) objective medical facts or clinical findings, (ii) diagnoses of examining physicians, (iii) subjective evidence of pain and disability as testified by the claimant, and (iv) the claimant's age, education and work history." None of these criteria supports the Secretary's conclusion. (i) A painful condition which was misdiagnosed as arthritis was later determined by clear "objective medical facts and clinical findings" to be a cancerous growth, ultimately requiring removal of part of the left shoulder and the humerus and replacing the bone with a prosthesis. (ii) The diagnosis of plaintiff's treating physician, Dr. Stewart, was unequivocal and undisputed that plaintiff was totally disabled at the time she quit her job in 1970, and the evidence is clear and undisputed that the cancerous condition grew and became even more painful until the surgery by Dr. Everest and ultimately the removal of the bone in 1979. Dr. Everest's opinion is supportive of Dr. Stewart's conclusion. No medical opinion is to the contrary. (iii) The testimony of plaintiff and two lay witnesses was clear that plaintiff's pain was so severe that she not only could not continue in her job, she could not perform normal housekeeping

chores and eventually sought psychiatric help for a depression induced in part by her pain, sleeplessness and inability to function normally. (iv) Plaintiff's work history was that of a woman who had worked for seventeen years, all of her adult life, when at age forty she quit her job. She testified that she needed to work because she had a daughter who wanted to go to college and the family needed her income. Nothing in the record suggests any reason for plaintiff's termination of employment other than her inability to perform the work due to the pain and loss of use of the left side of her upper body.

Despite the absence of any supporting medical opinion and in the teeth of the medical opinions of Dr. Stewart and Dr. Everest, the Secretary upheld the conclusion of the administrative law judge that the medical evidence failed to establish an impairment that "significantly affected her ability to perform work-related functions prior to March 31, 1975," or to return "to her past relevant work activity on or before March 31, 1975."

This conclusion is particularly puzzling since the undisputed evidence is that plaintiff's job at the shirt factory required her to keep her left arm and shoulder "in motion and reaching constantly." Dr. Everest stated that based on his findings, it would seem plausible that Mrs. Hamm "would not be able to carry out the duties of any occupation requiring involvement of her left upper extremity."

In the *Smith* case, there was conflicting medical opinion. The Court of Appeals reasoned that the Secretary had failed to give the proper weight to the opinion of the treating physician and relied too heavily on the conflicting view of a "one-shot" medical examiner. In Mrs. Hamm's case, there is not *any* conflicting medical opinion—not even from a "one-shot" medical examiner.[1]

Moreover, in *Smith*, the Court of Appeals held that the Secretary was in error in disregarding plaintiff's subjective complaints of pain even though the Secretary viewed them as "not supported by objective clinical and laboratory findings." In Mrs. Hamm's case, the objective clinical and laboratory findings in support of Mrs. Hamm's complaints of pain are obvious and those findings brought about the removal of part of Mrs. Hamm's arm and shoulder.

The case of *Berven v. Gardner*, 414 F.2d 857 (8th Cir. 1969), seems most apt for the case at issue. In *Berven*, the plaintiff suffered from cerebral atrophy, and this condition was not diagnosed until 1964. In 1964, the plaintiff sought to establish a disability commencing on or before June 30, 1959. The Court of Appeals for the Eighth Circuit pointed out that the medical statements of the doctors other than the treating physician were generally supportive of the conclusion of the general practitioner who was the treating physician of plaintiff Berven that she became unable to work in June of 1959. In *Berven*, the court concluded:

> "Where all of the medical testimony or expert opinion support or tend to support the claim of the appellant that she was disabled within the meaning of the statute in and prior to June 1959 and no medical or other testimony appears to the contrary, then we believe that a finding by the Secretary to the effect that disability was not established is not supported by substantial evidence and must be set aside."

In Mrs. Hamm's case we do not have merely subjective testimony to support her claim of persistent pain and inability to use her left arm and shoulder. Irrefutable medical evidence now establishes that she had a malignant cancer for a number of years, certainly going back prior to March 31, 1975, and according to the medical testimony such condition did not permit her to carry on her employment. There is no evidence that any jobs were available of a type which plaintiff would be able to perform. The Court concludes, therefore, that the findings of the Secretary are not supported

---

1. In *Allen v. Weinberger*, 552 F.2d 781 (7th Cir. 1977), the Seventh Circuit Court of Appeals stated: "We believe Dr. Acosta's opinion was sufficient to establish total incapacity in the absence of substantial evidence to the contrary." At 785–786.

by substantial evidence and that the determination as made by the Secretary in this case denying plaintiff disability insurance benefits is due to be reversed.

A judgment will be entered in accordance with this opinion.