Affirmed and Opinion filed May 15, 2003









Affirmed and Opinion filed May 15, 2003.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00915-CV

____________

 

MARIE JEAN, Appellant

 

V.

 

VELVA A. TYSON-JEAN and

TERRELL JOSEPH JEAN, Appellees

 



 

On Appeal from the 309th District Court

Harris County, Texas

Trial Court Cause No. 00-21385

 



 

O P I N I O N

This is an appeal from a final divorce decree denying
appellant an ownership claim in real property. Appellant asserts three points
of error, arguing the trial court improperly gave full faith and credit to a
disputed deed.  We affirm.

PROCEDURAL AND FACTUAL BACKGROUND








Appellees Velva A. Tyson-Jean and Terrell J. Jean initiated
divorce proceedings against each other in April and May, 2000,
respectively.  Appellant Marie Jean,
Terrell=s mother, intervened in the suit in
November, 2000, seeking a declaratory judgment to establish ownership of
property included in the community estate. 

The property in dispute is located at 1989 Southmore,
Houston, Harris County, Texas.  It was
purchased by appellant=s deceased husband Harry JeanCTerrell=s fatherCon January 6, 1989.  Although the initial general warranty deed
conveying the property to Harry reflects only Harry=s name as grantee,  appellant was present at the closing and she
was aware of the purchase.  Indeed,
appellant testified that Harry purchased the property for Terrell and his then-fiancée,
Velva; that Harry purchased similar properties for “all his kids”; and that
appellant was a “willing participant” to the transaction.   

Appellant acknowledges that her husband=s signature is the only one found on
the Deed of Trust; Security Agreement and Financing Statement; and Promissory
Note signed by Harry for the lender.  She
acknowledges, too, that Harry=s signature was the only one on the Residential Earnest Money
Contract he signed for the seller. 
Additionally, facts show neither appellant nor her husband ever lived at
1989 Southmore or claimed it as a homestead. 

Although there is conflicting testimony as to whether Terrell
and Velva were living in the house at the time Harry purchased it, there is
agreement that they lived there after Harry=s purchase.  On February 16, 1990Capproximately one year after Harry
purchased the propertyCTerrell and Velva were married.  They continued to live in the house together
until their separation in 2000.

            On
August 18, 1990Capproximately six months after his son and daughter-in-law
were marriedCHarry signed an assumption warranty
deed to Velva and Terrell.  Appellant was
not a signatory to the deed and claims she had no knowledge of Harry=s execution of the deed until some
years laterCafter Velva and Terrell
separated.  Harry died less than six
months after executing the deed to Velva and Terrell.  His estate was never probated.








There is conflicting evidence as to who made the down
payment, balloon payment, and tax payments on the Southmore property.  There is evidence that Velva and Terrell gave
Harry the original $13,000 down payment for the house; that Terrell paid the
$500 earnest money; and that Harry received $5,000 from Terrell and Velva to
conduct the transaction on their behalf. 
There is also evidence that Terrell and Velva made the final balloon
payment on the house in January 1994 with funds from their own savings account
and loans from relatives and friends. 
According to Velva=s testimony, these loans included a $1,500 loan from
appellant and that was paid back in full. 
Velva asserts appellant never claimed she held an ownership interest in
the property. 

Appellant, on the other hand, claims the original purchase
money for the property came from Harry=s and her own savings account and
that she contributed $5,000 in 1994 for Velva=s and Terrell=s balloon payment.  She claims these funds have not been paid
back.

Although Terrell says the original agreement with his father
was that Terrell was to maintain the property, make all payments, and assume
the noteCand that Harry would sell the house
to Terrell when Terrell=s credit improvedChe now claims he has always known his
mother had an ownership interest in the property.  Indeed, he supports his mother in her
assertion that the house is in his father=s estate and that appellant never
consented to Harry=s conveyance of the property to Terrell and Velva. 

Evidence exists to the contrary, however: (1) the August 1990
deed from Harry to Velva and Terrell conforms to the agreement Terrell
described in his testimony; (2) the deed recites a consideration of $10 and the
pay-off of the original note; (3) the deed is signed by Harry only and conveys
the property to Velva and Terrell jointly; and (4) documents suggest that
Terrell and Velva maintained the property, made the majority of the  mortgage payments, paid the utilities and
taxes, and paid off the balloon note in 1994.

Appellant testified that Harry was a good husband, good
father, and “fine upstanding man.”  She
testified, too, that Terrell is a good son, as well as an “upstanding” and “honorable”
man.  She does not think Terrell or Harry
ever intended to cheat her out of ownership in the Southmore property.








After a bench trial held February 13B19, 2002,  the trial court denied appellant=s ownership claim in 1989 Southmore
and found the property belonged entirely to Velva=s and Terrell=s community marital estate.  Appellant gave timely notice of appeal
whereby she seeks to establish her ownership interest in the property and void
the assumption deed of August 1990.

ISSUES ON APPEAL

Appellant asserts three points of error: (1) the trial court
erred when it found Harry=s conveyance of the Southmore property to his son and
daughter-in-law was effective; (2) the trial court erred when it failed to find
Harry=s son and daughter-in-law were “on
notice” that Harry lacked authority to convey the property; and (3) the trial
court erred when it found Harry was within the scope of his authority when he
conveyed 1989 Southmore without his wife=s joinder.[1]  

All three points of error pertain to the trial court=s conclusions of law in applying
subsection 3.104(b) of the Texas Family Code.

STANDARD OF REVIEW








Conclusions of law are always reviewable.  Middleton v. Kawasake
Steep Corp., 687 S.W.2d 42, 44 (Tex. App.CHouston [14th Dist.] 1985, writ ref=d). 
They will be upheld on appeal if the judgment can be sustained on any
legal theory supported by the evidence.  Kotis v. Nowlin
Jewelry, Inc. 844 S.W. 2d 920, 922 (Tex. App.CHouston [14th Dist.] 1992, no
writ).  Conclusions of law will not be
reversed, unless they are erroneous as a matter of law.  Johnston v. McKinney American, Inc., 9
S.W.3d 271, 277 (Tex. App.CHouston [14th Dist.] 1999, pet. denied).

A trial court=s conclusions of law are reviewed de novo as legal questions.  State v. Heal, 917 S.W.2d 6, 9 (Tex.
1996); PreCast Structures, Inc. v. City of
Houston, 942 S.W.2d 632, 636 (Tex. App.CHouston [14th Dist.] 1996, no
writ).  Under de novo review, the
reviewing court exercises its own judgment and redetermines each legal
issue.  Quick v. City of Austin, 7
S.W.3d 109, 116 (Tex. 1998).  Incorrect
conclusions of law will not require a reversal if the controlling finding of
facts will support a correct legal theory. 
Johnston, 9 S.W.3d at 277.

THE SOLE-MANAGEMENT PRESUMPTION

 

In her first point of error, appellant asserts the trial
court erred in finding Harry=s August 1990 deed conveyed an ownership interest in 1989
Southmore to Velva and Terrell.  She
claims the deed not only failed to transfer her interest in the
property, it failed to transfer Harry=s interest as well because 1989 Southmore was
part of Harry=s and appellant=s community estate and so could not
be transferred with just one spouse signing the conveyance to Terrell and
Velva.  See Dalton v. Don J. Jackson,
Inc., 691 S.W.2d 765, 768 (Tex. App.CAustin 1985, no writ).  We disagree.

There is no dispute that the property located at 1989
Southmore was community property during the time Harry held title to it.  See Tex.
Fam. Code Ann. ' 3.003(a) (Vernon 1998) (“[a]ll
property possessed by either spouse during or on dissolution of marriage is
presumed to be community property”); Tex
Fam. Code Ann. ' 3.002 (Vernon 1998) (“[c]ommunity property consists of the property, other than
separate property, acquired by either spouse during marriage”). See also In
re. McCloy, 296 F.3d 370, 373 (5th Cir. 2002); Cooper
v. Texas Gulf Industries, Inc., 513 S.W.2d 200, 202 (Tex. 1974); Smith
v. Smith, 22 S.W.3d 140, 144 (Tex. App.CHouston [14th Dist.] 2000, no pet.).








In general, community property is subject to the “joint
management, control and disposition of the spouses unless the spouses provide
otherwise by power of attorney in writing or other agreement.” Tex. Fam. Code Ann. ' 3.102(c) (Vernon 1998); In re. McCloy, 296 F.3d at 373 .  To effectuate a valid conveyance, both
spouses must necessarily be joined in a transaction. Cooper, 513 S.W.2d
at 202.

However,  where
community property is held in one spouse=s name only, there is a presumption
that the property is sole-management community property.  Tex.
Fam. Code Ann. ' 3.104(a) (Vernon 1998). 
Section 3.104 therefore trumps section 3.102.[2]
  Absent a showing of fraud or
notice on the part of persons dealing with the named spouse, this
sole-management presumption protects third parties who rely on the spouse=s authority to deal with the
property.  Tex. Fam. Code Ann. ' 3.104(b) (Vernon 1998); In re. McCloy, 296 F.3d at 373.[3]


To earn the right to rely on the presumption, a third party
must show three things: (1) the property conveyed was presumed to be subject to
the named spouse=s sole management; (2) the grantee was not party to a fraud
on the unnamed spouse; and (3) the grantee had no notice of any lack of
authority of the named spouse to convey the property.  Tex.
Fam. Code Ann. 3.104(b) (Vernon 1998). 









If the third party offers evidence supporting these three
facts, the burden shifts to the unnamed spouse to rebut the third party=s presumption of entitlement.  If the unnamed spouse successfully rebuts the
presumption, it becomes the third party=s burden to proveCby clear and convincing evidenceCthat the grantee was not a
party to fraud and that he or she did not know the named spouse lacked
authority.  Id.

That is what happened here. 
Velva and Terrell established their right to rely on Harry=s authority to deal with the property
by presenting three pieces of evidence. 
First, Velva presented evidence that the original warranty deed bore
only Harry=s signature, thus earning the right
to claim the presumption that 1989 Southmore was Harry=s sole-management community
property.  See Tex. Fam. Code Ann. ' 3.104(b)(1) (Vernon 1998).  Next, Velva elicited appellant=s and Terrell=s testimony to support the conclusion
that Harry and Terrell treated appellant fairly and did not attempt to defraud
appellant when executing the 1990 conveyance.  See Tex.
Fam. Code Ann. ' 3.104(b)(2)(A) (Vernon 1998).  Finally, Velva testified that appellant never
made claims appellant owned 1989 Southmore or asserted a right to the property.
See Tex. Fam. Code ' 3.104(b)(2)(B).








After Velva and Terrell established entitlement to the '3.104(b) presumption, the burden then
shifted to appellant to rebut the presumption. 
Appellant could defeat the presumption by either rebutting the '3.104(b)(1) requirement that 1989
Southmore was sole-management property, or by rebutting the '3.104(b)(2) requirement that Velva
and Terrell were not party to fraud and lacked notice of Harry=s alleged non-authority.  Because appellant put on testimonyCher own and Terrell=sCsuggesting that Velva and Terrell had
knowledge of Harry=s alleged “lack of authority” to convey the Southmore
property, appellant accomplished the latter. 
This defeated the presumption.[4]  See Sudduth v.
Commonwealth County Mutual Ins. Co., 454 S.W.2d 196, 198 (Tex. 1970) (true
presumption is simply a rule of law requiring the jury to reach a particular
conclusion in the absence of contrary evidence; the presumption disappears when
contrary evidence is introduced, but the facts upon which the presumption is
based remain in evidence and will support any inferences properly drawn
therefrom).  

With Velva and Terrell=s ' 3.104(b)(2) presumption rebutted,
the burden then shifted back to appellees to prove by clear and convincing
evidence that (1) Velva and Terrell did not know Harry lacked authority
to convey 1989 Southmore, and (2) Velva and Terrell were not parties to
fraud on appellant.  

After an examination of the record, we find Velva and Terrell
successfully met this burden and conclude there was legally and factually
sufficient evidence to support the trial court=s findings of “no notice” and “no
fraud.”

 

DID VELVA AND TERRELL HAVE NOTICE HARRY LACKED

AUTHORITY TO TRANSFER THE SOUTHMORE PROPERTY?

 

In her second point of error, appellant asserts her son and
daughter-in-law knew Harry was married at the time he conveyed 1989 Southmore
to them; therefore, appellant argues the trial court erred in failing to findCas a matter of lawCthat Velva and Terrell were “on
notice” that Harry lacked proper authority to convey the property.  See Tex.
Fam. Code Ann. ' 3.104(b)(2)(B) (Vernon1998). 
We disagree for two reasons.

(1)       Simply knowing a person is married is not the same as knowing
he or she lacks authority to convey sole-management property.

 

Appellant provides no case law or statute to support her
contention that the  existence of a
familial relationship between Terrell and Velva and Terrell=s father was sufficient to provide
Terrell and Velva with actual or constructive notice regarding Harry=s ability to convey his sole
management community property.  She cites
no authority for the proposition that merely having knowledge a person is
married is, as a matter of law, the same as knowing the person lacks authority
to convey property.








Texas case law indicates that simply knowing someone is
marriedCor that he or she has been marriedCwithout more, is not enough to prove
notice under ' 3.104(b)(2)(B).  See e.g. First Southern Prop., Inc. v.
Gregory, 538 S.W.2d 454, 458  (Tex.
Civ. App.CHouston [1st Dist.] 1976, no writ)
(finding no constructive notice of wife=s rights where “mere pendency of a
divorce action” is known); Williams v. Portland Bank, 514 S.W.2d 124,
126 (Tex. Civ. App.CBeaumont, 1974, writ dism=d by agr.)
(finding notice of grantor=s lack of authorityCnot from bank=s knowledge that grantor was marriedCbut rather from bank=s knowledge that grantor=s wife had once refused to sign
papers conveying her property interest.).[5]

(2)       The weight of
the evidence favors the trial court=s finding of “no notice.”

 Appellant points to
virtually no evidence that might have alerted Terrell and Velva to appellant=s alleged claim on the property.  Appellant admits she never got “involved” in
the purchase of the property; she acknowledges her signature was not on any of
the original purchase documents; and she states she was a “willing participant”
to Harry=s original purchase transaction.  She claims the $13,000 down payment for the
disputed property came from hers and Harry=s community funds, but she offers no
evidence or documentation to support this claim.  The trial court, therefore, was free to
reject her testimony and believe the conflicting testimony and evidence that
Terrell and Velva paid the $13,000.  See
re. D.T.C., 30 S.W.3d 43, 50 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (trier
of fact is free to accept or reject any or all of any witness=s testimony).








While evidence supporting appellant=s “notice” allegation is weak,
evidence supporting the trial court=s “no notice” finding is strong: (1)
Harry=s signature was the only one on the
deed; (2) Velva testified appellant never made assertions of ownership prior to
her suit in intervention; (3) appellant acknowledged she knew Harry intended to
give Terrell the house at the original closing and that she was a “willing
participant” to this plan; (4) Terrell and Velva acted as though they owned the
property by paying the monthly payments and taxes on the house; (5) appellant
failed to probate Harry=s estate or assert a claim against the property in the six
years after Harry=s death; and (6) appellant failed to assert a claim on the
property in 1994, when Velva and Terrell made their balloon payment and
acquired title to the property.[6]









Because appellant=s challenge to the trial court=s finding that Velva and Terrell did
not have “actual and constructive notice” of Harry=s lack of authority[7]
is a factual sufficiency challenge lodged against a finding on which the
appellees have the burden, we examine the entire record and set aside the
finding only if the trier of fact could not reasonably have found existence of
the fact to be established.  See Beard
v. Beard, 49 S.W.3d 40, 55 (Tex. App.CWaco 2001, pet. denied).  

Based on the foregoing facts, we conclude a reasonable trier
of fact could have found Velva and Terrell lacked notice of appellant=s adverse claim on 1989 Southmore.[8]
Accordingly, we overrule appellant=s second point of error.  

DID HARRY ACT WITHIN THE SCOPE OF HIS AUTHORITY

OR DID HE COMMIT FRAUD AGAINST HIS SPOUSE? 

 

In her third point of error, appellant asserts the trial
court erred when it found Harry was within the scope of his authority when he
conveyed 1989 Southmore without his wife=s joinder.  We disagree.

Although a spouse has the right to dispose of community
property under his or her control, he may not dispose of his spouse=s interest in community funds if
actual or constructive fraud exists.  Carnes
v. Meador, 533 S.W.2d 365, 370 (Tex. Civ. App.CDallas 1976, writ ref=d n.r.e.).  See also Mazique
v. Mazique, 742 S.W.2d 805, 807 (Tex. App.CHouston [1st Dist.] 1987, no writ) (“In
the absence of fraud on the other spouse, the managing spouse has the sole
right of control and disposition of the community property as he or she sees
fit.”).  Here, appellant makes no claim
that her husband ever committed actual fraud against her.[9]  Rather, she asserts Harry committed “constructive
fraud.”[10]








Constructive fraud is the breach of a legal or equitable duty
which the law declares fraudulent because it violates a fiduciary
relationship.  Archer v. Griffith,
390 S.W.2d 735, 740 (Tex. 1964).  It does
not require an intent to defraud.  Carnes,
533 S.W.2d at 372.  

A presumption of constructive fraud arises when a spouse
unfairly disposes of the other spouse=s interest in community
property.  Carnes, 533 S.W.2d at
370; Reaney v. Reaney,
505 S.W.2d 338, 340 (Tex. Civ. App.CDallas, 1974, no writ).  The burden is upon the disposing spouse or
his donee to prove the fairness of a disposition of the other spouse=s one-half community property. Carnes,
533 S.W.2d at 370; Murphy v. Metropolitan Life Insur.
Co., 498 S.W.2d 278, 282 (Tex. Civ. App.CHouston [14th Dist.] 1973, writ ref=d n.r.e.).

Here, the following facts were proffered to support a finding
that Harry did not breach his fiduciary duty to appellant or conduct a
transaction that was unfair to the community estate: (1) Harry did not conceal
the original Southmore purchase from appellant, nor did he conceal his intent
to ultimately transfer the property to Terrell and Velva; (2) the community
estate received $5,000 from Terrell and Velva for Harry=s help in purchasing the Southmore
property; (3) Harry conducted similar transactions for all of his and appellant=s children and appellant was aware of
this at the time Harry purchased the Southmore property; (4) Terrell and Velva,
not Harry, paid the $500 earnest money and $13,000 down payment for the house;
(5) Terrell and Velva made the monthly payments on the house, as well as the
bulk of the balloon note pay-off in 1994; (6) Terrell and Velva paid back all
funds borrowed from appellant for the balloon note pay-off; and (7) Terrell and
Velva made most of the tax payments. 








Based on the foregoing, we conclude a reasonable trier of
fact could have found Harry=s conveyance of the 1989 Southmore property was fair and
within the scope of Harry=s  authority.[11]  As such, Terrell and Velva were entitled to
rely on Harry=s authority to deal with the
property.  See Tex. Fam. Code Ann. ' 3.104(b) (Vernon 1998).

Accordingly, we overrule appellant=s third point of error.

CONCLUSION

Because evidence does not support a finding of fraud or
notice of a lack of authority, and because appellant did not successfully rebut
the sole-management presumption stated in subsection 3.104(a) of the Texas
Family Code, Velva and Terrell were entitled to rely on Harry=s authority to convey 1989
Southmore.  See Tex. Fam. Code Ann. ' 3.104(b) (Vernon 1998).   As such, Harry=s conveyance of the disputed property
to Velva and Terrell was effective as a transfer of title.  We therefore overrule appellant=s challenge to the conveyanceCher first point of errorCand conclude Harry=s August 1990 deed conveyed an
ownership interest in 1989 Southmore to Velva and Terrell.

Finding no error, we conclude the property is an asset of
Velva and Terrell=s community estate and subject to the trial court=s just and right division.  Having overruled all three of appellant=s points of error, we affirm the
judgment of the trial court.

 

 

/s/        John S. Anderson

Justice

 

 

 

Judgment rendered
and Opinion filed May 15, 2003.

Panel consists of
Justices Yates, Anderson, and Frost.

 











[1]  Although appellant
states early in her brief that she is challenging the trial court=s findings of fact numbered 7, 14, 19, 21, 25, and 26,
appellant never in fact addresses the legal or factual sufficiency of these
findings.  Indeed, she points to no place
in the record where the facts are disputed. 


When a trial court acts as fact finder,
its findings are reviewed under legal and factual sufficiency standards.  In re Doe, 19 S.W. 3d 249, 253 (Tex.
2000); Mays v. Pierce, 281 S.W.2d 79, 82 (Tex. 1955); Cohen v. Sims,
830 S.W.2d 285, 287 (Tex. App.CHouston [14th Dist.] 1992, writ denied).  When appellant makes no challenge to the
trial court=s fact findings, we are bound by them, same as a jury
verdict.  See McGalliard
v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Henry
v. Henry, 48 S.W.3d 468, 475 (Tex. App.CHouston
[14th Dist.] 2001, no pet.); Cohen, 830 S.W.2d at 287.





[2]  When
two statutes conflict, the general rule of construction is that the specific
controls over the general. Tex. Gov=t Code Ann. '
311.026(b) (Vernon 1998).  See also
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 901 (Tex. 2000).  





[3]  Tex. Fam. Code ' 3.104 reads:

(a)        During marriage, property is presumed to
be subject to the sole management, control, and disposition of a spouse if it
is held in that spouse=s name, as shown by muniment, contract, deposit of
funds, or other evidence of ownership, or if it is in that spouse=s possession and is not subject to such evidence of
ownership.

(b)        A third person dealing with a spouse is
entitled to rely, as against the other spouse or anyone claiming from that
spouse, on that spouse=s authority to deal with the property if:

(1)        the property is presumed to be subject
to the sole management, control, and disposition of the spouse; and

 (2)       the
person dealing with the spouse: 

(A)       is not a party to a fraud on the other
spouse or another person; and 

(B)        does
not have actual or constructive notice of the spouse=s lack of authority.





[4]  Appellant and
appellees disagree as to whether a showing of both notice and fraud is required
to rebut Velva and Terrell=s presumption of entitlement.  It is this court=s conclusion that, because appellees had the burden to
demonstrate both Ano fraud@ and Ano notice@ to earn
the presumption of entitlement, appellant needed to put on evidence of only one
of the two required elements to rebut the presumption.  





[5]  See
also Turner v. Calif. Co., 54 F.2d 552, 553 (5th
Cir., 1931) (finding under Texas law that grantee=s
knowledge that grantor had once been married was insufficient to prove grantee
was on notice grantor lacked authority); Griggs v. Houston Oil Co., 213
S.W. 261, 263 (Tex. Com. App. 1919) (finding no notice to grantee that grantor
was married at time of conveyance where grantor gave power of attorney under
title of AMrs.@);
Cumming v. Johnson, 616 F.2d 1069, 1076 (9th Cir. 1979) (finding no
notice under Texas law of shareholder=s
lack of authority to convey stock where shareholder held stock in his name only
and wife made no attempt to intervene in the action, even though plaintiff knew
shareholder had a wife and knew she was a shareholder).





[6]  Appellant
argues she failed to assert her claims to 1989 Southmore because she did not
know of Harry=s 1990 deed conveying ownership to Velva and Terrell
until her son and daughter-in-law=s
divorce was pending.  However, she did
know of Harry=s death in 1991 and of Velva and Terrell=s balloon note pay-off in 1994Cthus, she had two notable opportunities to assert
claims on the house.  Because tax bills
went to Velva and Terrell, the assumptive warranty deed was recorded.  An instrument that is properly recorded in
the proper county is notice to all persons of the existence of the
instrument.  Tex. Prop. Code Ann. ' 13.002
(Vernon 1984); Detering Co. v. Green,
989 S.W.2d 479, 481 (Tex. App.CHouston [1st Dist.] 1999, pet. denied).

Moreover, appellant=s failure to make inquiries regarding ownership of
1989 Southmore after the death of her husband and at the time of the balloon
note=s pay-off negates any reliance on the discovery
rule.  See Little v. Smith, 943
S.W.2d 414, 420 (Tex. 1997) (noting that Texas courts have generally refused to
apply the discovery rule to claims arising out of probate proceedings); Mooney
v. Harlin, 622 S.W.2d 83, 85 (Tex. 1981) (holding
claimant=s assertion of discovery rule failed because she was
on constructive notice that decedent=s will
had been filed for probate and so could have determined she was excluded from
the will by examining public records); Neill v. Yett,
746 S.W.2d 32, 36 (Tex. App.CAustin 1988, writ denied) (holding claimant=s suit to set aside grandfather=s will was time-barred because examination of probate
records would have revealed no bequest to claimant); Estate of Ross, 672
S.W.2d 315, 318 (Tex. App.CEastland 1984, writ ref=d n.r.e.)(holding
four daughters who sought to set aside order admitting father=s will to probate had constructive notice because A[p]ersons interested in an
estate are charged with notice of the contents of probate records.@). 





[7]  The trial
court=s Conclusion of Law Number 12 states ATerrell Joseph Jean and Velva Tyson Jean, to the
extent that Harry Jean may have been acting without the authority of Marie
Jean, did not have actual or constructive notice of the alleged lack of
authority, if any.@  We construe
this conclusion as a finding of fact.





[8]  This finding
was reflected in the trial court=s
conclusions of law number 10 and 12.





[9]  Because
appellant testified there was no Aintention@ on the part of Terrell or Harry to defraud her,
actual fraud could not have been proved. 
Intent is a required element of actual fraud.  Carnes, 533 S.W.2d at 372; Archer
v. Griffith, 390 S.W.2d 735, 740 (Tex. 1965).





[10]  Although
appellant did not assert Aconstructive fraud@ in her
pleadings, she did assert AHarry Jean did not, and could not, have transferred
Marie Jean=s interest@ in the
Southmore property because it was community property.  Because lack of authority based on fraud
negates a managing spouse=s right of control and disposition of community
property, we will read appellant=s
assertion liberally to include an allegation of constructive fraud. 





[11]  This finding
was reflected in the trial court=s
conclusions of law numbered 6B8.