**Willena ROSS, Plaintiff-Appellant,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 16383.**

United States Court of Appeals
Sixth Circuit.

July 29, 1966.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Willena Ross filed her application for disability benefits under the Social Security Act, Title 42 U.S.C.A. § 423. After a hearing, the Hearing Examiner denied appellant any period of disability and disability insurance benefits. On appeal, the Appeals Council refused to review the decision, in effect, affirming the Hearing Examiner. Thereafter, appellant Ross filed an action in the United States District Court against the Secretary of Health, Education and Welfare, pursuant to Section 205(g) of the Social Security Act, as amended, Title 42 U.S. C.A. § 405(g), seeking to have the decision against her reversed and set aside; and that she be granted a period of disability and disability insurance benefits. After a hearing, the District Court affirmed the decision of the Hearing Examiner, and dismissed appellant's complaint on the ground that her impairments were not of a long-continued and indefinite duration, or of the type which rendered her unable to engage in any substantial activity, as set forth under Title 42 U.S.C.A. § 423(c) (2).

Mrs. Ross, the appellant, is fifty-one years of age, and has a sixth grade education. The only jobs she ever held required manual labor, such as waitress, bottlewasher, and binder in a lithographing company. She had a past medical history of some six or seven operations, including vein ligation and stripping procedure on the left, and operations relating to the appendix, tubes, and ovaries.

On October 7, 1961, appellant felt a sudden pain in her left thigh above the knee joint, became nauseated, "blacked out," and had trouble getting her breath. She was taken to the emergency room at the Kentucky Baptist Hospital, by a police ambulance, and was admitted to the hospital. Her condition was diagnosed as acute ileofemoral thrombosis left and pulmonary infarction, chronic

William L. Gibson, Louisville, Ky. (Gibson & Gibson, Louisville, Ky., on the brief), for appellant.

William B. Martin, Lexington, Ky. (Boyce F. Martin, Jr., U. S. Atty., John E. Stout, Asst. U. S. Atty., Louisville, Ky., on the brief), for appellee.

bilateral phlebitis and venous insufficiency. Her attending physician stated that her condition was static; that she was completely disabled from doing her work and he knew of no other work which she could do. He further stated that there was no known hope for the possibility of her recovering completely from her phlebitis which is known to be a chronic and incurable situation.

Appellant was examined by other doctors who confirmed the previous diagnosis of phlebitis. She was also examined by another doctor in consultation with the attending physician, who confirmed the diagnosis of phlebitis and suggested continuation of anti-coagulant therapy and wearing elastic stockings for five to six months. He also stated that her activity was restricted from prolonged standing or sitting.

Appellant was also examined by a physician at the request of the Secretary, who likewise confirmed the diagnosis of phlebitis but made no statement concerning her disability.

Under the undisputed evidence in this case, the findings made by the Secretary are not supported by substantial evidence.

In his opinion which was affirmed by the Appeals Council and by the District Court, the Hearing Examiner quoted the following from a medical text, upon which he evidently relied in his finding against Mrs. Ross:

"Venous obstruction by thrombosis may be either a primary, simple, noninflammatory process (phlebothrombosis) or a secondary reaction to local or distant inflammatory agents with active inflammation of the wall of the the affected vein (thrombophlebitis). * * * The most serious complication of phlebothrombosis or thrombophlebitis is pulmonary embolism which follows dislodgement of a thrombus shortly after it has formed and before organization has fixed it firmly in the vein of origin. In general, the greater the local tenderness and pain in the extremity the less is the danger of embolism, since thrombi usually loose before pronounced inflammatory reaction develops. Large thrombi dislodged from the femoral, iliac or pelvic veins commonly produce fatal pulmonary embolism, a frequent cause of sudden death after operation or deep pelvic irradiation. * * * As soon as thrombophlebitis is suspected, the patient should be kept at rest in bed with the affected extremity slightly elevated to diminish edema. * * * Anticoagulants, as mentioned before, can have little effect on existing thrombi, but should be used to prevent propagation, as described under Anticoagulant Therapy. Local heat should be applied by means of a thermoregulated cradle. * * * After temperature and pulse are normal, the patient may sit up in bed unless activity is followed by return of symptoms or a rise in temperature. Passive, and later active, movements of the affected extremity are stated gradually to help recovery of the muscle tone and to assist the function of collateral venous channels. If edema still forms, the limbs should be elevated nightly. When normal activity is resumed, an elastic stocking should be worn until measurement of the extremity reveals no accumulation of edema fluid while the tissues are unsupported." (An article entitled "Diseases of the Peripheral Vessels," by Hugh Jackson Morgan, M.D., D.Sc. (Hon.), Professor Emeritus of Medicine, Vanderbilt University School of Medicine; Physician, Vanderbilt University Hospital and Veterans Administration Hospital, Nashville, Tennessee, in A Textbook of Medicine by Cecil & Loeb, p. 1342.)

The first time that this language of a medical text appeared in the case was in the Hearing Examiner's decision. Appellant, a poor woman, was without counsel on the hearing.

In Glendenning v. Ribicoff, D.C., 213 F.Supp. 301, 302, 303, it is said:

"In weighing the evidence, the hearing examiner, who is not shown to be a medical specialist, undertook to dis-

credit the opinion of the orthopedic surgeon, Dr. Overesch, by independent medical research and citations to medical texts without prior notice to the plaintiff and without the benefit of interpretation by professionally competent specialists. * * *

"The consideration of this extra-record medical information was erroneous as a matter of law, even if it be assumed that under proper conditions such extra-record information could be noticed and considered by the examiner, a matter not free of doubt. Administrative agents and agencies are not privileged to take judicial notice of evidentiary material which is not a matter of common knowledge. To do so denies to the affected party 'the fundamentals of a trial,' in the words of Mr. Justice Cardozo, speaking for a unanimous Court, in Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 728, 729, 81 L.Ed. 1093, l. c. 1099. The practice of noticing evidentiary material after the case has been submitted amounts to a 'pretext for dispensing with the trial.' Ohio Bell Telephone Co., supra."

In Cook v. Celebrezze, 217 F.Supp. 366, 368 (D.C.W.D.Mo.), the court said:

"The hearing examiner made a finding contrary to this medical evidence, relying chiefly upon an electroencephalographic report from the Veterans Administration Hospital, Kansas City, Missouri, the significance of which was not evaluated by a qualified medical expert. Exhibit 5, transcript page 59, l. c. 61. The examiner stated:

" 'A normal encephalogram, the only specific laboratory evidence in the whole record, discounts and negates the existence of any cerebral lesion characteristic of any kind of epilepsy and the claimant's own testimony when questioned at the hearing to describe these so-called blackouts, i. e., that he gets dizzy, finds a dark place, passes out, vomits and has headaches, is entirely uncharacteristic of epilepsy in which there are varying kinds of momentary seizures and accompanying rigidity during which the sufferer is incapable of any conscious movement or arrangement with a total lack of awareness after the seizure has passed.' * * *

"In this manner the hearing examiner, who is not shown to be a medical specialist, without the benefit of any opinion evidence from a qualified medical expert, has reached conclusions both with regard to the medical significance of a normal electroencephalographic report and the plaintiff's alleged symptoms, which no one but a qualified medical expert would be qualified to express. If the examiner's opinion is founded on special study, reading or consultation not shown in the record, the hearing examiner has made use of extra-record information, not a matter of common knowledge, from unspecified sources. The plaintiff has been given no opportunity to rebut this evidence. Administrative agents and agencies are not privileged to take judicial notice of evidentiary material which is not a matter of common knowledge."

Appellee submits that the Hearing Examiner properly relied upon the medical statement which he included in his decision and as authority for such contention refers to Moon v. Celebrezze, 340 F.2d 926 (C.A.7), claiming that this case recognizes the propriety of the use of "medical texts," such as made in the instant case. However, the *Moon* case applied only to the use of statements of "physical requirements for these jobs as outlined in two governmental publications."

Rinaldi v. Ribicoff, 305 F.2d 548, 549, 550 (C.A.2), is also relied upon by appellee as permitting the use of medical texts in opinions in disability claims under the Social Security Act; but the *Rinaldi* case, in this regard, is no more than authority for the use of two studies, "The Performance of Physically Impaired Workers in the Manufacturing Industries, Bulletin No. 923, U. S. Depart-

ment of Labor (1947) and Disability Evaluation Principles of Treatment on Compensable Injuries, by Dr. Earl D. McBride, 667–692 (5 ed. 1953)"

Appellee submits that Section 7(d) of the Federal Administrative Procedure Act, Title 5, U.S.C.A. § 1006(d), provides: "Where any agency decision rests on official notice of a material fact not appearing in the evidence in the record, any party shall on timely request be afforded an opportunity to show the contrary." Whether or not any evidence to the contrary of the medical text, relied upon by the Hearing Examiner in the decision in the instant case, could be adduced, or whether it had any bearing on the issue of whether appellant was disabled (which is doubtful), it appears that the Hearing Examiner, who was not versed in diseases of the peripheral vessels, undertook to act as an expert himself, and considered this rather highly scientific medical text to be a proper ground for his denial of appellant's claim.

In disregarding the uncontradicted opinon evidence of the medical experts who had examined appellant, and in undertaking a scientific research of his own and deciding the case on what he thought this medical text meant, the Hearing Examiner set himself up as an interpreter of recondite medical knowledge and decided the case without regard to the evidence of the medical witnesses who had examined appellant.

█ In this the Hearing Examiner was guilty of error, for as Chief Judge Weick said, in passing upon a similar issue in Hall v. Celebrezze, 314 F.2d 686, 690 (C.A.6):

"While the Secretary may have expertise in respect of some matters, we do not believe he supplants the medical expert."

█ Moreover, the Hearing Examiner further committed error in his decision in holding:

"The Hearing Examiner cannot make a finding of 'disability' based solely upon the opinion or conclusion expressed by a physician."

This is contrary to our holding in Hall v. Celebrezze, supra, at 689, where it was held:

"The Secretary gave no weight to the uncontradicted opinion evidence of Doctors Scott and Blair heretofore set forth with respect to Hall's disability. Since the statute required that the disability result from a 'medically determinable physical or mental impairment.' (42 U.S.C.A. § 416(i) (1) and § 423(c) (2)), the claimant had no way of establishing his case if his credible medical evidence is disregarded."

█ In addition, the Hearing Examiner committed error when, in his decision, he held:

"The Social Security Act, as amended, clearly requires that the physical or mental impairment which results in claimant's alleged inability to engage in any substantial gainful activity, must be medically determinable. Therefore, it is essential that the physician's opinion or conclusion be supported by adequate objective clinical findings and reports of indicated studies and tests."

Obviously, the Hearing Examiner in this case, as in other cases coming to our attention, assumed that "medically determinable" means "supported by objective clinical findings and reports." The Act means nothing of the kind.

█ Mental impairment alone may result in disability entitling the one suffering therefrom to disability benefits under the Social Security Act. Such impairment may be medically determinable but, in few cases, could a conclusion of such impairment be supported by objective clinical findings. See Hill v. Celebrezze, 233 F.Supp. 298 (D.C.E.D. S.C.).

█ Pain, unaccompanied by any objectively observable symptoms, may be so real and so intense as to be disabling, and will support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d

293 (C.A.2). The fact that there is such a subjective symptom as pain of claimant for social security benefits does not mean that it ranks as a lesser type of disability. Blanscet v. Ribicoff, 201 F. Supp. 257 (D.C.Ark.).

There is no requirement that a physician's evidence or testimony must be supported by objective clinical findings. Page v. Celebrezze, 311 F.2d 757 (C.A.5); Lightcap v. Celebrezze, 214 F. Supp. 209 (D.C.Pa.).

It was error on the part of the Hearing Examiner to hold, in this case, that the physician's opinions or conclusions must be supported by adequate objective clinical findings.

Where uncontradicted medical evidence tended to establish disability of claimant, the decision of the Secretary denying benefits was not supported by substantial evidence. Celebrezze v. Warren, 339 F.2d 833 (C.A.10).

Since the findings made by the Secretary are not supported by substantial evidence, the judgment of the District Court is reversed, and the case remanded to the Secretary of Health, Education and Welfare, with directions to award disability insurance benefits.