Warren G. **FORBES**, Plaintiff,

v.

**Robert H. FINCH**, Secretary of Health, Education, and Welfare, Defendant.

No. 2311.

United States District Court
E. D. Tennessee,
Northeastern Division.

Dec. 23, 1969.

James N. Hardin, Greeneville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a judicial review of the plaintiff's claim for disability benefits under the Social Security Act. 42 U.S.C. § 405 (g). The decision of December 24, 1968 of an appeals council, which affirmed a hearing examiner's decision denying Mr. Forbes such benefits, became the final decision of the defendant Secretary.

The plaintiff claims that he became unable to work on May 1, 1966. The hearing examiner found that the plaintiff was not under a disability within the meaning of the aforementioned Act. The issue on this review is whether such finding is supported by substantial evidence.

" * * * [A]n individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *." 42 U.S.C. § 423(d) (2).

" * *. * [A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d) (3).

On the date the plaintiff claims his disability commenced, Dr. K. C. Lynch, a general practitioner, examined Mr. Forbes and listed as his diagnoses a right bundle branch blockage of his heart, osteoarthritis, anxiety reaction, and a probable arteriosclerotic heart disease. About a year afterward, an internist, Dr. Lyman A. Fulton, confirmed the diagnosis of the heart blockage and found evidence of a coronary artery disease and angina pectoris and scoliosis of the lumbar and dorsal spine. Dr. Lynch considered the plaintiff's psychiatric illness ("probably depression"), apparently in remission. The plaintiff was referred to Dr. Marshall D. Hogan, Jr., a psychiatrist, about the same time, who could find no overt manifestations of illusions, delusions or hallucinations but who was unwilling to say they were nonexistent. Dr. Hogan thought Mr. Forbes' chronic schizophrenic reaction, paranoid type, was then in a state of only partial remission.

Mr. Forbes was hospitalized, and, after a few days or weeks, was discharged with a diagnosis of the heart blockage and osteoarthritis with radicular chest pain. Less than four months afterward, Dr. Zelma L. Herndon, a psychiatrist, diagnosed the plaintiff's mental condition as a chronic, undifferentiated type of schizophrenic reaction but concluded that he was probably competent to handle his fiscal affairs. The following December, after his examination, a psychologist, Dr. Clayton Lee Carpenter, made

a diagnosis of "pseudopsychoneurotic schizophrenic reaction", that being frustrations somewhat coverted into bodily symptoms over several years.

Mr. Forbes was ingesting medication at the time, and shortly before Christmas 1967 imbibed an entire pint of whiskey, and this combination rendered him unconscious and inspired his admission to a hospital. At discharge about three weeks afterward, the diagnoses were that he suffered an anxiety reaction, with marked hysteric tendencies, somatization and outbursts of threatening and chaotic behavior, in addition to the aforementioned blockage. Two months afterward, Mr. Forbes was back to Dr. Lynch for treatment for ten days. Dr. Lynch noted the heart blockage as well as pain in Mr. Forbes' left chest, with the probable cause unascertained. At the request of Dr. Lynch, Dr. Nathan A. Ridgeway, Jr., an internist, examined Mr. Forbes several times. Dr. Ridgeway recommended that the plaintiff undergo medical therapy for his "psychotic disease". It was his opinion on April 29, 1968 that Mr. Forbes was disabled, due principally to osteoarthritis and a severe state of tension.

This greatly abbreviated summary of the medical findings and opinions in the relevant period serves to demonstrate that Mr. Forbes, who was only 45 years of age and uneducated when he claims he became disabled, has been beset with at least one distinct physical impairment and many variable and sporadic mental impairments for years. Before the onset of the claimed disability period, the plaintiff had a history of psychiatric disturbances which led at one time to the administration of a series of shock treatments.

Except for his tenure in the armed services, Mr. Forbes worked for 27 years with the same employer. He appears to have been an excellent welder. This was most fortunate for his work career with that employer, because his health or personality were such that, apart from the excellence of his craftmanship, he was not a desirable employee. He was absent from work for about 40 weeks in 1966. He was a frequent complainer at the company infirmary. He is described as an emotionally unstable and inadequate individual in his employment. It is undisputed that his employer tolerated him as an employee until he retired, solely and alone because he was "an outstanding worker".

It is undisputed also that Mr. Forbes, to a reasonable degree of medical certainty, was a victim throughout the period of his claim of the aforementioned heart blockage. The Court understands that this difficulty involved a muscular band, containing nerve fibers which connect the auricles with the ventricles of the heart, which conveys stimuli from the auricle to the ventricle; that this bundle includes the right septal division; and, that the degeneration of this bundle produced a blockage in Mr. Forbes' heart. *Cf.* Medical Dictionary (Dorland's, 23d ed.) 209–210. Thus, the record shows conclusively that the plaintiff has a physical impairment that results from an anatomical or physiological abnormality which is demonstrable by medically acceptable clinical and laboratory techniques.* There is substantial evidence to support the examiner's finding that Mr. Forbes "does not have a significant heart condition which prevents moderate exertion", (although the Court, if the fact-finder, might have eliminated the word "significant".) Coupled with this physical impairment are impairments produced by osteoarthritis, coronary heart disease, angina pectoris, scoliosis of both the lumbar and dorsal spine, and the unascertained possibility of arteriosclerotic heart disease.

The examiner found further that the plaintiff has a mental impairment that results from a psychological abnormality which is demonstrable by medically acceptable clinical techniques. The exam-

---

* In fact, the presence of the blockage prevented satisfactory tests of other suspicions by one of the physicians.

iner found this condition consists of "a mild to moderate anxiety reaction with no psychosis" and that the plaintiff "is mentally competent". This latter finding is not fully supported by substantial evidence: there is substantial evidence, however, to have supported a finding that Mr. Forbes is thought to be "mentally competent to handle his own funds".

It was found and concluded by the examiner that the combination of his impairments "have not been severe enough since his quitting work in February, 1967 to prevent [the plaintiff's engaging in] substantial gainful activity comparable to his prior employment" ; that "the evidence fails to establish that the [plaintiff's] impairments prevented him from engaging in substantial gainful activity commencing at any time prior to the date [i. e., August 22, 1968] of this decision" ; and that "the plaintiff was not under a 'disability' as defined in the Social Security Act, as amended, at any time prior to this issuance of this decision".

Auxiliary and supporting findings of the examiner are that "the Tennessee State agency described his [the plaintiff's] impairments as coronary artery disease and schizophrenic reaction"; and "that he [is] not psychotic". Elsewhere in his lengthy opinion, the examiner summarizes the medical evidence of the plaintiff's condition in a manner, so as to find that:

> the overwhelming preponderance of [the] evidence clearly establishes that the [plaintiff's] impairments have been no worse since he quit working than they were during the years that he had engaged in substantial gainful activity * * * [and] * * * that he has not been under a period of disability commencing at any time prior to the date of this decision.

The examiner then recognized that the plaintiff's "primary" difficulty involves his abnormal personality. This finding, if such it be, appears to be well-supported by everything in the record. Instead of following this correct statement

with a consideration of whether all the impairments of Mr. Forbes have resulted in his inability, by reason thereof, to engage in any substantial gainful activity, which is within the plaintiff's capability, realistically judged by his education, training and experience, on a consideration of what is reasonably possible, as opposed to conceivable or theoretical, in Mr. Forbes' case, Celebrezze v. Bolas, C.A. 8th (1963), 316 F.2d 498, 501 [8], [9], the examiner then set forth his interesting theory, observing that the plaintiff's abnormal personality

> is not disabling because he most certainly could not have retained his employed status long enough to become eligible for retirement benefits under the [Tennessee Eastman's] company's private retirement insurance program if it influenced his work. * * * There is [sic: are] also strong indications in the record that the claimant decided that he would retire and seek financial benefits, exploiting his emotional disorders. * * * It is obvious that the benefits from these [retirement, veterans' pension, personal insurance] sources along with Social Security benefits, if allowed, * * * [would produce] * * * annual income * * * far in excess of $5,000 a year. * * * [I]t is reasonable to assume that the cessation of claimant's work activity was due more to his decision to retire from work activity rather than from being under a disability. Such benefits made it more profitable for him to sustain a disability claim than to be at work. * *

There is no reason to pause to consider whether these inferences by the examiner are reasonable. It may be safely assumed that Mr. Forbes' entitlement to income from these sources was ascertained properly within the scope of whatever agreements and laws may have been applicable to those independent claims. All this begs the crucial question: whether the combination of all the impairments produced a condition in Mr. Forbes which did, or did not, render him

incapable of engaging further in substantial gainful activity.

■ There is in this record abundant opinion of medical experts that, whatever his motivation, Mr. Forbes is disabled. The Court recognizes that these opinions of the medical experts are merely advisory; that the question of the plaintiff's disability is a factual issue which is to be resolved by the fact-finder. But, these opinions, so very persuasive in determining capability or disability, must not be rejected arbitrarily. Cf. United States v. McFalls, D.C.Tenn. (1965), 247 F.Supp. 439, 440 [3].

Of the medical experts whose specific opinions were available for the consideration of the administrators herein,

—Dr. Allen was of the opinion that the plaintiff was disabled totally and permanently in 1966;

—Dr. Greene expressed his opinion that Mr. Forbes could not be expected in July, 1966 to recover sufficiently to be gainfully employed;

—Dr. Herndon thought Mr. Forbes' condition in 1967 "interfered with" his gainful employment;

—Dr. Hogan concluded that the plaintiff had not responded in 1967 to various treatments and hospitalizations, "nor is it likely, in my opinion, that he will"; and,

—it was the opinion of Dr. Ridgeway, Jr. in 1968 that Mr. Forbes was "completely disabled". The Court has searched the 22½ single-spaced, wide-margined, small-type, typewritten pages of the examiner's decision, without finding any reference whatever to the foregoing opinions of the aforenamed physicians, who cover the spectrum of the fields of occupational medicine, psychiatry and internal medicine. It must be concluded, accordingly, that, for reasons best known to himself, the examiner has disregarded completely the foregoing credible medical evidence.

■■ The burden of proving his disability herein was upon Mr. Forbes. Wright v. Celebrezze, D.C.Tenn. (1965),
246 F.Supp. 330, 332. It was incumbent upon him to have shown that his disability resulted from a medically-determinable physical or mental impairment or a combination thereof. 42 U.S.C. § 423. But, it was not necessary for him to show that he was wholly helpless in order to have established his claim. Berry v. United States (1941), 312 U.S. 450, 455, 61 S.Ct. 637, 85 L.Ed. 945. It is probably true that Mr. Forbes is just as capable today of doing the physical acts necessary to welding as he was on the last day he worked gainfully in that capacity. However, for a person to weld or engage in other kind of substantial gainful work in the national economy, physical capability is essential, but a great deal more than his being capable of performing the required physical acts is necessary. And, what the average person might be capable of doing is not germane; the specialized issue is what this particular claimant is capable or incapable of doing, and the effect of the combination of impairments upon this particular claimant. Ellerman v. Flemming, D.C.Mo. (1960), 188 F.Supp. 521, 526 [7]. " * * * Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant. * * * " Thomas v. Celebrezze, C.A. 4th (1964), 331 F.2d 541, 546.

■ Mr. Forbes proved that he was *retired from his former employment as* one who was totally and permanently disabled. He produced credible medical evidence that he is disabled. As the examiner found, the plaintiff's primary impairment involves his abnormal personality. " * * * Mental impairment *alone* [emphasis supplied] may result in disability entitling the one suffering therefrom to disability benefits under the Social Security Act. * * * " Ross v. Gardner, C.A. 6th (1966), 365 F.2d 554, 558 [4].

There was no way for Mr. Forbes to establish his claim if his credible medical evidence was disregarded by the examiner. McLaughlin v. Celebrezze, D.C.Tenn. (1965), 239 F.Supp. 802, 804, citing Hall v. Celebrezze, C.A. 6th (1963), 314 F.2d 686, 690. If the findings of the defendant Secretary are supported by substantial evidence, they are conclusive. Wright v. Celebrezze, *supra,* 246 F.Supp. at 332. Substantial evidence is more than a scintilla, but less than a preponderance. Universal Camera Corp. v. National L. R. Bd. (1951), 340 U.S. 474, 497, 71 S.Ct. 456, 472, 95 L.Ed. 456. The medical opinions offered by Mr. Forbes provided competent evidence of his condition. Hall v. Celebrezze, *supra,* 314 F.2d at 690 [3].

In judicially reviewing whether the evidence supporting an administrative finding is substantial, "* * * whatever in the record fairly detracts from * * *" the weight of the evidence must be taken into consideration. Universal Camera Corp. v. National L. R. Bd., *supra,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. at 467 (headnote 3). "* * * [I]f, for example, reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are * * * bound to decide against the Secretary. * * *" Thomas v. Celebrezze, *supra,* 331 F.2d at 543 [3]. The remaining question is whether, under such circumstance, this action should be reversed or remanded for a rehearing. 42 U.S.C. § 405(g). The Court is empowered to do either. Thomas v. Celebrezze, *idem.*

The test on remanding is whether more evidence is necessary to develop the facts necessary to determine the cause. Flemming v. Rhoades, C.A. 5th (1960), 276 F.2d 788, 789. This Court believes that no further evidence is necessary to a decision herein. "* * * The proof of the [plaintiff's] disability was strong, and the evidence to the contrary was lacking in substance. 'After the long pendency of the application, [the Court sees] no reason to remand the case for the taking of further testimony'. Cyrus v. Celebrezze, 341 F.2d 192, 197 (C.A.4). * * *" Sayers v. Gardner, C.A. 6th (1967), 380 F.2d 940, 955 [11], 23 A.L.R.3d 1014.

Judgment will enter, denying the defendant's motion for a summary judgment, granting the plaintiff's motion for a summary judgment, reversing the final decision of the defendant Secretary, and remanding this action to him with direction to award the plaintiff the disability benefits he claims.