Bobby J. HAWKINS, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services of the United States, Defendant.

No. 83–1845.

United States District Court, D. Kan.

Jan. 22, 1985.

David H.M. Gray, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is an action under 42 U.S.C. § 405(g) for judicial review of the decision of the Secretary of Health and Human Services terminating Plaintiff's entitlement to disability benefits under the Social Security Act. This matter originally came before this Court on Plaintiff's motion for summary judgment and alternative motion for remand, and the Secretary's motion to affirm the Secretary's decision. In a ruling filed September 24, 1984 this Court denied both motions for summary judgment and remanded the case to the Secretary with instructions to effectuate reconsideration by the Administrative Law Judge (ALJ). The Appeals Council submitted a Clarifying Order of Appeals Council dated October 19, 1984 in which it again reaffirmed the termination of Plaintiff's period of disability but failed to obtain reconsideration by the ALJ. This matter is now before the Court again on Plaintiff's renewed motion for summary judgment.

Plaintiff was originally granted a period of disability beginning in June, 1977, because of chronic alcoholism, liver disease, and secondary malnutrition. (R. 14–15) He stopped drinking on January 14, 1980. (R. 49) He failed at a brief work attempt as a janitor. He was forced to stop working in 1980 because his foot disorder caused too much pain, and he could not do the walking. (R. 14, 167–168) The Secretary ruled that Plaintiff's disability ceased in March, 1982, and his entitlement to benefits ceased in May, 1982. He has Pes Planus and planter calluses (R. 78, 146), which limit him to six hours of intermittent standing. (R. 142) It was because of this impairment that the ALJ found Plaintiff's residual functional capacity to be limited to sedentary employment. (R. 16)

In 1978, Plaintiff, according to his doctor, ... reached an irreversible phase in his chronic liver disease. There is already evidences of hepatocellular damage due to the increase in SGOT and LDH and superimposed to it we can see an increase in the alkaline phosphatase. Evidences of severe liver dysfunction are concluded also because of the low albumin and low cholesterol. Probably the patient has Laenec's cirrhosis of the liver with end stage organ damage, due to chronic alcoholism. Since he already has signs of accumulation of ascitic fluid and hepatomegaly I believe he is disabled because of his prognosis is essentially poor at that degree of liver dysfunction.

He was mentally clear but he could develop portal encephalopathy after a high protein meal or as a result of any other metabolic disturbance.

In summary, I believe Mr. Hawkins is disabled.

(R. 130–131)

Plaintiff's liver condition has improved considerably, but he still has an elevated serum magnesium level, which usually indicates renal insufficiency (R. 158), a high globulin level, which could relate to old liver damage (R. 146), diet limitations (R. 116), and the need to urinate frequently. (R. 40, 153)

Also apparently resulting from his alcohol addiction, Plaintiff has lost normal reflexes. (R. 137) A consultative physician also found Achilles reflex to be absent and sensation to be decreased, "both suggesting early sensory and motor neuropathy ... The MCV is increased, suggesting ineffective erythropoiesis." (R. 153) Another Social Security examining physician found no sensation from the feet halfway to the knees. (R. 146)

Plaintiff was committed to Larned State Hospital in 1974 for a ninety day treatment. He was diagnosed as having a passive aggressive personality and alcohol addiction. (R. 124) By 1980, chronic brain syndrome, and chronic desocialization were noted. Low-normal intelligence was also noted, and

His personality profile suggested that he was schizoid and had difficulty in dealing with authority. Recommendations were made for highly structured aftercare program.

(R. 136) At that time he had difficulty comprehending what was expected of him, and he did not accept the recommendation to attend Midtown Halfway House. (R. 136)

Following the onset of Plaintiff's sobriety, the following psychological evaluation was made on January 29, 1980:

Personality test data suggests an individual who might best be classified as a schizoid personality. This type of individual holds a basic, sullen distrust toward other people and finds it difficult to relate interpersonally. His basic outlook on life is one of chronic pessimism and worry and in times of stress there may be evidence of somewhat bizarre and unusual behavior. Bobby demonstrates a resentment toward authority figures and social institutions in general and may be expected to find the task of going along with rules and regulations of a treatment program to be somewhat difficult.

In light of this individual's personality style and low level of intelligence, it is suggested that his treatment program be fairly simple and straight forward, and that interventions be oriented toward behaviors rather than abstract insight. This individual will occasionally need to withdraw from others on an emotional and cogitative level as a result of his defenses being shaken. When this occurs it should be allowed, although he should be encouraged to talk with others about his distrust after he is sufficiently recovered. It is also suggested that a highly structured aftercare program would be helpful for this person.

(R. 138)

To fully explore the possibility of chronic brain syndrome, a neuropsychological evaluation was performed January 1, 1983 by Leslie Ruthven, Ph.D., a clinical psychologist. He found Plaintiff to be functioning in the low average range of intelligence, but his intellectual efficiency was undermined by impulsive or disinhibited reactivity. He was found to act without adequate reflection. His thinking was rigid, and he tended to persist in a fruitless direction even though events would indicate a different course of action. Diagnosed as having minimal brain dysfunction, he was observed to be impaired by disinhibition, which may have led to his previous alcoholism. The psychologist concluded that Plaintiff had some potential for returning to competitive employment with the assistance of therapy. (R. 169–170) Examples of Plaintiff's inappropriate and unrealistic thought processes are found at R. 48–49,

where he indicated he could do alcoholic counseling, drafting, and engineering.

Plaintiff heeded this psychologist's recommendation in anticipation that he would be able to work again. His therapy, however, disclosed additional and much more serious problems. An April 20, 1983 report from his psychologist disclosed:

After my initial evaluation of the above individual (see Report dated 1/27/83) I began seeing him in weekly psychotherapy sessions, which I anticipate continuing for a year or so. In my contacts with him I have found that there is much more serious psychopathology—and disability—then I was aware of from my first evaluation, which was directed toward the issue of brain damage because of a previous diagnosis of Organic Brain Syndrome. My current diagnosis is that of a chronic paranoid schizophrenic reaction in a recovering alcoholic with minimal brain dysfunction. Clinically and on psychological tests I have found him to have substantial delusional ideas and I feel that these paranoid beliefs play a dominant role in his social isolation and estrangement from people, including family members. Heretofore I thought he might be able to handle the demands of employment within the next six months but I am not expecting him to be able to handle gainful employment for at least a year or more, but I am fairly hopeful about the long term prognosis for this individual. In addition to the therapy, I am also encouraging him to pursue vocational evaluation and training with the Department of Vocational Rehabilitation.

(R. 176) It is this report which was submitted to the Appeals Council after the hearing and which occasioned the previous remand of this case to the Secretary.

Specific examples of Plaintiff's isolation and other symptoms can also be found in his testimony. He lives in a storage van on a business street. His only amenities are a couch, an old TV and a hot plate. He has no restroom and no running water. (R. 44) He has only one friend around whom his few activities revolve. (R. 45) His only other social contact is his sister. (R. 53) He inarticulately expressed a problem relating to people. (R. 45–46) He has depression "day and night." (R. 46)

This court has previously described the scope of review in *Green v. Schweiker*, 582 F.Supp. 786 (1984) at 789–790:

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that 'the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.' Substantial evidence is such evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In *Arie v. Heckler*, No. 82–1608 (D.Kan. July 15, 1983), the Court stated:

While it is not the duty of the Court to reweigh the evidence, the Court may not mechanically accept the findings of the Secretary, but must scrutinize the entire record to determine whether the conclusions reached are rational. *Martin v. Schweiker*, 562 F.Supp. 912 (D.Kan.1982). The Court cannot affirm the Secretary's decision by isolating a few facts and calling them "substantial evidence." *Cline v. Califano*, No. 78–4166 (D.Kan. August 31, 1979). In applying these standards, the Court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled. *Dvorak v. Celebreeze*, 345 F.2d 894 (10th Cir.1965).

In the order remanding this case, this Court expressed the view that there was not substantial evidence to support the Secretary's decision. A full review of all the evidence was ordered. This order included instructions that a reconsideration by the ALJ be conducted. It was this Court's opinion that the ALJ, as the finder of fact, should have the opportunity to listen to the Plaintiff's testimony with the benefit of the knowledge of Plaintiff's mental disorder contained in the April 20, 1983 report. The order remanding this case also stated:

The Appeals Council cited the following criteria for review:

> Appeals Council will grant a request for review of a hearing decision where: (1) there appears to be an abuse of discretion by the administrative law judge; (2) there is an error of law; (3) the administrative law judge's action, findings, or conclusions are not supported by substantial evidence, or (4) there is a broad policy or procedural issue which may affect the general public interest. These sections also provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review will be granted where the Appeals Council finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

The Appeals Council then found that there is no basis for review because the diagnosis of chronic paranoid schizophrenic reaction is without clinical findings and the diagnosis of minimal brain dysfunction is not different from the diagnosis presented at the hearing. This ruling by the Appeals Council is clearly erroneous. The new evidence is material, and it is based on clinical findings including both clinical observations and tests. While the ALJ did not abuse his discretion by not considering this evidence, since that evidence was not available at the time of the hearing, it was an error of law for the agency to refuse to consider it when it was properly presented. In view of the significance of this new evidence, it may well be that the ALJ's ruling is not based on substantial evidence. Because of the order which follows, no final ruling is now made in this regard. Finally, there does appear to be a broad policy or procedural issue which may affect the general public interest in that the agency has declined to reconsider the ALJ's ruling when it was presented with such material new evidence in due course during the administrative process.

■ Plaintiff is disabled by his mental impairment if he meets the "listing" found at 20 C.F.R. Part 404, Subpart P. Appendix 1 § 12.03. Plaintiff may still be disabled if he lacks the residual functional capacity for substantial gainful activity even if his impairments do not meet the listings. The Secretary's policy of assuming that a younger worker who does not meet the listings is not disabled has been enjoined. *Mental Health Association of Minnesota v. Schweiker,* 554 F.Supp. 157 (D.Minn. 1982) held in a class action that the agency must still determine the residual functional capacity for work of people who did not meet the listings. This ruling was upheld with modification that does not undermine the district court's ruling. *Mental Health Ass'n of Minnesota v. Heckler,* 720 F.2d 965 (8th Cir.1983). See also *City of New York v. Heckler,* 578 F.Supp. 1109 (E.D.N.Y.1984) and *Stokes v. Schweiker,* 729 F.2d 932 (3d Cir.1984). The Secretary has since repealed nationwide the policy enjoined in *Mental Health Association of Minnesota.* See 4 R.I.A. *Social Security Coordinator* § 30,793. Residual functional capacity must, therefore, be determined according to 20 C.F.R. § 404.1545(c):

> (c) *Mental impairments.* When we assess your impairment because of mental disorders, we consider factors such as your ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, co-workers and work pressures in a work setting.

See *Stokes v. Schweiker,* supra.

■ It is a matter of common knowledge that chronic paranoid schizophrenia is at best a devastating illness. *Morrone v. Secretary of HEW,* 372 F.Supp. 794 (E.D.Pa. 1974). Schizophrenia, even with medication and even if there are no active delusions or bizarre behavior, prevents the person afflicted from making appropriate emotional responses to people, saps his energy, undermines his motivation, and prevents sustained activity for any period of time. *City of New York v. Heckler,* supra. The facts of this case demonstrate that Plaintiff does

meet the listings for psychotic impairments. He meets part A found at 20 C.F.R. Part 404, Appendix 1 § 12.03 of the test because his schizophrenia is productive of both depression and delusions. He meets part B of the listing because "his paranoid beliefs play a dominant role in his social isolation and estrangement from people, including family members." (R. 176) His previously described living circumstances and limited activities further corroborate the fact that he fulfills the requirements of part B of the listing.

■■■ The evidence of disabling schizophrenia is uncontradicted in the record. It is well recognized that where all expert opinions support or tend to support the claim of disability and no medical or other testimony appears to the contrary, then the Secretary's decision denying disability is not supported by substantial evidence. *Berven v. Gardner*, 414 F.2d 857 (8th Cir. 1969); *Celebrezze v. Warren*, 339 F.2d 833 (10th Cir.1964); and *Ross v. Gardner*, 365 F.2d 554 (6th Cir.1966). Medical evidence contradicting Plaintiff's disability must be substantial. *Bastien v. Califano*, 572 F.2d 908 (2d Cir.1978); *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1983); and *Branham v. Gardner*, 383 F.2d 614 (6th Cir. 1967). See also *Miller v. Califano*, (D.Kan.1980) Unpub. No. 78–1417.

■■■ Furthermore, the Secretary is required to consider Plaintiff's impairments in combination. This was not done by the ALJ, who offered no analysis of how Plaintiff's brain dysfunction and related problems of inhibition might contribute to his other impairments that made him fit for sedentary employment only. (R. 14–17) Neither did the Appeals Council consider the evidence of paranoid schizophrenia in combination with the brain dysfunction, disinhibition, and physical impairments. (R. 5) In its Clarifying Order, the Appeals Council recited all of Plaintiff's impairments but offered no analysis of their combined effect. Unless the Secretary considers all of a claimant's impairments, singly and in combination, the decision is not supported by substantial evidence. *Mur-*

*phy v. Schweiker*, 524 F.Supp. 228 (Ohio, 1981); *Brittingham v. Weinberger*, 408 F.Supp. 606 (E.D.Pa., 1976); and *Bittel v. Richardson*, supra. In fact, every circuit has ruled that the combined effects of all impairments must be considered. Francis, *Social Security Disability Claims*, § 11:42 citing *McLain v. Schweiker*, 715 F.2d 866 (4th Cir.1983) and *Deloatche v. Heckler*, 715 F.2d 148 (4th Cir.1983).

■■■ The Appeals Council dismissed the evidence of paranoid schizophrenia as being "without clinical findings." (R. 5) Nothing could be further from the facts. Observations or reports of delusions, paranoid beliefs, and social isolation made over a period of three months of weekly psychotherapy sessions by a clinical psychologist (R. 176) should qualify as clinical findings if anything does. In any event, the courts consistently reject the Secretary's overly restrictive requirements of clinical findings. Especially in the case of mental impairments, precise diagnostic techniques are not required. See 4 R.I.A. *Social Security Coordinator* § 30,445 and *Taddeo v. Richardson*, 351 F.Supp. 177 (C.D.Calif. 1972). A strict reading of the statutory requirement that an impairment be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques" is inappropriate in the context of mental illness. *Lewis v. Weinberger*, 541 F.2d 417 (4th Cir.1976); *Wyatt v. Weinberger*, 519 F.2d 1285 (4th Cir.1975); and *Young v. Harris*, 507 F.Supp. 907 (D.S.C.1981). The court in *Ross v. Gardner*, 365 F.2d 554, 558 (6th Cir.1966) noted that few cases of disabling mental impairment could be documented by objective clinical findings.

This Court also finds persuasive a Department of Social and Rehabilitation Services Closure Report on Plaintiff which was previously submitted to this Court in support of his motion for remand, signed by both a counselor and a supervisor, this vocational rehabilitation assessment indicates that Plaintiff is not eligible for services because his handicap is too severe to make rehabilitation services worthwhile. In fact, his impairments were judged to be

so severe that his case will not be reviewed. This evidence is both new and material, and should have been considered as part of the "full review of all the evidence" previously ordered by this Court.

The Appeals Council's Clarifying Order states:

> The Appeals Council believes that these findings identify a mild behavior disorder, however, they do not identify a significant mental impairment such as a psychosis involving gross distortions of external reality or disorganization of personality. Particularly absent in the reports of record including the added reports by Dr. Ruthven are medical signs and findings noting an impaired intellect and specific abnormalities relating to affect, thought, memory, orientation and contact with reality, and other related findings showing marked restriction of activities, constriction of interests, and deteriorations of personal habits.

This belief of the Appeals Council bears no relation to the evidence in the record. Dr. Ruthven found delusional ideas and paranoid beliefs which play a dominant role in Plaintiff's social isolation and estrangement from people. Far from "a mild behavior disorder," the entire record establishes a severe psychotic disorder which meets the listing and which certainly deprives Plaintiff of the residual functional capacity for any substantial gainful activity. The Secretary would have to ignore the record to reach a contrary conclusion. There is no substantial basis for the Secretary's ruling.

It was hoped that with the instructions contained in the remand of this case that the Secretary would reconsider this case in the proper and legal perspective. Instead, the Secretary has turned a deaf ear to a case of obvious disability. This attitude is shocking enough. But the Secretary has shown this Court no more respect nor concern for following the law than it has shown Plaintiff. This Court ordered the Secretary to include reconsideration by the ALJ as part of its proceedings pursuant to the remand of this case. The Secretary

instead defied this order by conducting the reconsideration only through the Appeals Council. This defiance of the Court's order did not enter into the deliberations of the merits of this case, but this Court can not refrain from observing that such defiance indicates an arrogant administrative attitude that is either bent upon denying benefits no matter how meritorious the claim or a callousness and indifference that amounts to the same thing.

The Secretary's decision terminating disability benefits is not supported by substantial evidence in the record. Plaintiff has established his claim for continuing benefits from the original onset of his disability to the present.

IT IS THEREFORE ORDERED that the Plaintiff's motion for summary judgment is granted, and the Secretary's motion for an order affirming the Secretary's decision is denied. The Secretary is directed to restore Plaintiff's period of disability and all unpaid benefits from May, 1982 to the present.