**Rose ALDRICH, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 83–0198–B.**

United States District Court, D. Maine.

May 29, 1985.

Richard A. Estabrook, Bangor, Me., for plaintiff.

Timothy C. Woodcock, Asst. U.S. Atty., William H. Browder, Asst. U.S. Atty., Bangor, Me., for defendant.

## ORDER GRANTING AWARD OF COUNSEL FEES

CYR, Chief Judge.

Plaintiff moves for an award of counsel fees pursuant to the Equal Access to Justice Act [EAJA], 28 U.S.C. § 2412(d)(1)(A).

Plaintiff filed an application for Supplemental Security Income benefits on February 10, 1982, alleging an inability to work since 1981 due to fainting spells, bladder dysfunction and ulcers. The application was denied initially and upon reconsideration. A *de novo* hearing was held on October 6, 1982, before a Social Security Administration administrative law judge [ALJ], and on December 30, 1982, the ALJ found

that plaintiff did not have a "severe" impairment and that therefore she was not disabled. On March 24, 1983 the ALJ's decision became the "final decision" of the Secretary upon its affirmance by the Appeals Council.

Plaintiff timely sought judicial review pursuant to 42 U.S.C. § 1383(c)(3) and on January 27, 1984 the court remanded the case to the Secretary for further administrative proceedings. *Aldrich v. Heckler,* No. 83–0198–B (D.Me.1984) [unpublished order]. The court found that in deciding that plaintiff did not suffer from a severe mental impairment, the ALJ improperly rejected, without explication, uncontradicted medical evidence that plaintiff suffered from conversion hysteria with seizures of a degree that would affect her ability to work. The court rejected the ALJ's characterization of the evidence as "speculative" and observed that in light of the available evidence in the record "pointing to the possible, if not probable, presence of so many serious impairments, both physical and mental .., [and] considering the utterly destitute circumstances of this plaintiff, the failure to develop the record at the Secretary's expense ... was a dereliction of duty." Order, at 9, 11.

On March 10, 1984, prior to any further proceedings on remand, plaintiff died. On August 30, 1984 the Appeals Council vacated its prior decision denying benefits and entered its order awarding benefits from the date of application to the date of death. The parties entered into a stipulation of dismissal on September 13, 1984, formally concluding the action.

■ Enacted in 1980, the EAJA authorizes an award of fees and expenses to parties who prevail against the United States, unless the government's position was "substantially justified" or "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Applicable to actions seeking judicial review of the administrative denial of social security benefits,[1]

1. Administrative proceedings before the Social Security Administration are excluded from coverage under the EAJA. *McGill v. Secretary of Health and Human Services,* 712 F.2d 28, 30 (2d

*see Martin v. Heckler*, 754 F.2d 1262, 1264 & n. 2 (5th Cir.1985) [and cases cited], the purpose of the EAJA is to reduce the danger that challenges to unreasonable governmental action would be deterred by the high cost of litigating against the government. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9–10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984–88.

■ The determinative issue on the motion for counsel fees under the EAJA is whether the Secretary's position, i.e., the Secretary's decision denying benefits, *see Cornella v. Schweiker*, 728 F.2d 978, 983 (8th Cir.1984), was substantially justified,[2] which essentially turns upon the reasonableness in law and fact of the action taken. On this issue the government bears the burden. *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir.1985); *Wolverton v. Heckler*, 726 F.2d 580, 583 (9th Cir.1984). Although an adverse decision on the merits does not preclude a finding of substantial justification, *Martin v. Heckler*, 754 F.2d at 1264, the Secretary's position is unreasonable where she presents no evidence to support her position, e.g., *Hicks v. Heckler*, 756 F.2d 1022, 1025 (4th Cir.1985), or where she applies an erroneous legal standard, *see Washington v. Heckler*, 756 F.2d at 967–68; *Howard v. Heckler*, 581 F.Supp. 1231, 1233 (S.D.Ohio 1984). Similarly, substantial justification does not mean "nonfrivolous," *McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir.1983), and will not be found where the Secretary merely relies on "some evidence" of nondisability, *see Tressler v. Heckler*, 748 F.2d 146, 150 (3d Cir. 1984). Rather, to meet her burden the Secretary must make a "strong showing" that her position was justified. *Washington v. Heckler*, 756 F.2d at 961; *Cornella v. Schweiker*, 728 F.2d at 982 & 983 n. 9. *But see Guthrie v. Schweiker*, 718 F.2d 104, 108 (4th Cir.1983) [Secretary's position is substantially justified although she does no more than rely on an arguably defensible administrative record].

Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

■ Upon review and consideration of the entire record the court finds that the position of the Secretary was not substantially justified.

The principal piece of medical evidence pertaining to plaintiff's various physical and mental impairments was the medical report of Dr. Leadley, a specialist in internal medicine. Dr. Leadley determined that plaintiff had a psychiatric problem, which probably was the result of an inadequate personality disorder with hysterical features and chronic anxiety with paresthesias. Dr. Leadley offered this assessment based on physical examinations of the plaintiff, as well as on his personal observations of two of plaintiff's "seizures" or "spells," which he described in great detail. At the hearing before the ALJ, Dr. Ordway, a board-certified psychiatrist serving as medical advisor, testified that the description of plaintiff's spells provided by Dr. Leadley "certainly is typical of hysterical conversion spells or seizures." Dr. Ordway also testified that based on Dr. Leadley's personal observations, plaintiff's medical history and plaintiff's description of her symptoms, which were also described in the testimony of plaintiff's husband, plaintiff met the listed impairment for functional nonpsychotic disorders set forth in 20 C.F.R. Part 404, Subpart P, Appendix I, § 12.04.

The ALJ rejected, as "speculative," Dr. Leadley's report and Dr. Ordway's testimony regarding plaintiff's seizure disorder, in that their conclusions were not supported by the requisite clinical and laboratory findings. The Secretary asserts that she reasonably argued that the report of Dr. Leadley was not supportive of a finding that plaintiff suffered from a severe mental impairment, and that the ALJ's characterization of Dr. Ordway's testimonial diagnosis, as "speculative," was not unreasonable given the absence of firm objective findings.

2. The Secretary does not dispute that plaintiff was a "prevailing party" or that the motion for counsel fees was timely under the EAJA.

The court's decision remanding this case makes clear that the Secretary's determination of nonseverity was not reasonable in law or in fact. There was *no* evidence in the record contraindicating Dr. Ordway's medical assessment and diagnosis, yet without asking any but the most open-ended questions of Dr. Ordway the ALJ simply concluded that Dr. Ordway's diagnosis was "speculative." In finding that there was no reason that Dr. Ordway's testimonial diagnosis did not constitute a medically acceptable clinical diagnostic technique, as contemplated by the Secretary's regulations, *see* 20 C.F.R. § 416.928(b); *see also* 42 U.S.C. § 1382c(a)(3)(C), the Court observed:

> Dr. Leadley is an internist, not a psychiatrist like Dr. Ordway. Both Dr. Leadley, in his apparently disparaging description of the spells he observed (and then in his description of plaintiff's falling asleep in his waiting room), and the ALJ, in his quotation of Dr. Leadley's description of these spells, appear to suggest that plaintiff may have been feigning these spells. Yet Dr. Leadley's diagnosis does not question that plaintiff suffers from 'episodic spells of unknown etiology,' only their etiology is questioned, *see* Tr. at 144. The ALJ does not base his finding (that there was insufficient medical evidence) on plaintiff's incredibility, but on the basis that Dr. Leadley's diagnosis (and Dr. Ordway's as well) is 'speculative.' The fact is that Dr. Leadley *observed* these spells with his own eyes in his own office, and diagnosed them as 'episodic spells,' and 'speculated' (reasonably enough for an internist not trained in psychiatry) as to their etiology. Dr. Ordway, on the other hand, testified, as a medical advisor (board-certified psychiatrist) at the request of the Secretary, that he did believe the plaintiff suffers from such spells, *see* Tr. at 64–65, that

the spells are 'certainly ... typical of hysterical conversion spells or seizures,' *see* Tr. at 64, which was one of the possible diagnoses advanced by Dr. Leadley as well, *see* Tr. at 144. Furthermore, the ALJ seems to have believed plaintiff's and her husband's extensive testimony about these spells. [*See* Tr. at 55: 'ALJ: Counsel I have no further belief problems if that's what you're going to say.']

Order at 14, n. 4. Clearly, Dr. Leadley provided the ALJ and Dr. Ordway with "observable facts that can be medically described and evaluated," 20 C.F.R. § 416.-928(b), and hence provided the requisite "signs" from which Dr. Ordway could diagnose a mental impairment.[3] Yet despite this evidence and the ALJ's apparent acceptance of plaintiff's description of her "spells," the ALJ substituted his own lay conclusion in place of the medical diagnoses of two board-certified professionals. At the very least Dr. Ordway's conclusion that plaintiff met the Secretary's listing of impairments for functional nonpsychotic disorders should have alerted the ALJ to a need to explore further the basis for Dr. Ordway's findings.[4]

The court found the conclusory findings of the ALJ objectionable not only because the ALJ failed to take advantage of the opportunity to question Dr. Ordway, but also because the ALJ failed to develop the record properly in the face of evidence pointing to the possible, if not probable, presence of so many serious impairments, both physical and mental. The Secretary contends that it was not unreasonable to have argued that a represented claimant had an obligation to request additional consultative examinations in furtherance of the claimant's duty to submit medical evidence.

Responding to the Secretary's contentions, the court observed that although a

---

3. In the case of mental impairments it consistently has been recognized that *precise* diagnostic techniques are not always required to establish the existence of a mental impairment. *See, e.g., Hawkins v. Heckler,* 600 F.Supp. 832, 837 (D.Kan.1985) [and cases cited].

4. As the court observed, plaintiff's representative may have decided to ask no questions of Dr. Ordway because he may well have believed that Dr. Ordway had made his client's case. Order at 9.

claimant is responsible for submitting medical evidence showing the existence of an impairment, *see* 20 C.F.R. §§ 416.912, 416.913(d), there is nothing in the Secretary's regulations which imposes an affirmative duty on the claimant to request *additional* consultative examinations. The regulations do provide that where the medical evidence is not sufficient to permit the Secretary to determine whether the claimant is disabled, the *Secretary* can request and will pay for additional tests. Even assuming with respect to plaintiff's *physical* maladies that plaintiff can somehow be charged with failing to submit adequate evidence or that her representative had some affirmative duty to request additional tests, it was unreasonable for the ALJ not to request additional tests for the purpose of obtaining "more detailed medical findings" or to obtain "technical or specialized medical information," 20 C.F.R. § 416.-917(b)(1), (2), about plaintiff's *mental* condition, given plaintiff's testimony and that of her husband, the medical report of Dr. Leadley, the testimony of Dr. Ordway, and plaintiff's obviously destitute financial circumstances.

■ Because hearings on disability claims are not adversary proceedings, the Secretary shares some affirmative duty to develop the record and to ensure that all the necessary and relevant information is produced, irrespective of whether the claimant is represented. The ALJ's unexplicated conclusory determination that relevant testimony is "speculative" and his failure to ask Dr. Ordway any but the most open-ended questions fall far short of fulfilling the Secretary's responsibility. Furthermore, in light of Dr. Ordway's uncontroverted testimony it clearly cannot be fairly argued that plaintiff's representative was under any obligation to request additional testing of plaintiff's mental impairment.

Accordingly, and for the reasons set forth above, the court finds that the position of the Secretary was not substantially justified. There being no special circumstances making an award of counsel fees and costs unjust, and it appearing that the award is in all respects reasonable and appropriate in the circumstances,[5] it is ORDERED that judgment be entered in favor of Richard Estabrook, Esquire, in the sum of $2,114.

---

5. The Secretary erroneously asserts that plaintiff's award of counsel fees should be reduced since his request for fees at the rate of $75 per hour is excessive. Counsel's affidavit in support of his motion requests fees at the rate of $60 per hour, which is reasonable.